Robert K. BELL, et al., Plaintiffs,

v.

FORE SYSTEMS, INC., et al., Defendants.

Civil Action No. 97–1265.

United States District Court, W.D. Pennsylvania.

June 29, 1998.

434

Steven G. Schulman, Milberg, Weiss, Bershad, Hynes & Lerach, New York City, Alfred G. Yates, Jr., Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA, Richard Schiffrin, Schiffrin, Craig & Barroway, Bala Cynwyd, PA, Thomas W. Brown, Carnegie, PA, Lawrence G. Soicher, New York City, for Robert K. Bell, Kenneth Jantz, Martin A. Rich, Stanley Kapron, Millionerrors Investment Club, Ed Saber and Neil Lazzaro.

Alfred G. Yates, Jr., Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA, Daniel E. Bacine, Barrack, Rodos & Bacine, Philadelphia, PA, for Alexander Haff.

Alfred G. Yates, Jr., Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA, Sherrie R. Savett, Todd S. Collins, Genna D. Kidd, Berger & Montague, Philadelphia, PA, Mel E. Lifshitz, Bernstein, Liebhard & Lifshitz, New York City, Kurt Olsen, Berger & Moss, Corpus Christi, TX, for Meridian Capital Funding, Inc.

Alfred G. Yates, Jr., Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA, Robert P. Frutkin, Savett, Frutkin, Podell & Ryan, Philadelphia, PA, Ira Richards, Trujillo, Rodriguez & Richards, Philadelphia, PA, for Ray Chiostri.

Alfred G. Yates, Jr., Gerald L. Rutledge, Law Offices of Alfred G. Yates, Jr., Pittsburgh, PA, for Rita M. Davidson.

David J. Manogue, Howard A. Specter, Joseph N. Kravec, Specter, Specter, Evans & Manogue, Pittsburgh, PA, Alfred G. Yates, Jr., Law Offices of Alfred G. Yates, Jr., Philadelphia, PA, for Oscar Federbusch.

David A. Brownlee, Thomas R. Johnson, Kirkpatrick & Lockhart, Pittsburgh, PA, for

Fore Systems, Inc., Eric C. Cooper, Michael I. Green, Robert D. Sansom, Francois J. Bitz, Onat Menzilcioglu and Thomas J. Gill.

### ORDER

CINDRICH, District Judge.

AND NOW, this 29 day of June, 1998, after the plaintiffs filed a consolidated amended complaint in the above-captioned case, and after the defendants moved to dismiss the consolidated amended complaint pursuant to Federal Rules of Civil Procedure 9(b) and 12(b)(6), and after a Report and Recommendation was filed by the United States Magistrate Judge, and the parties were granted ten days after being served with a copy to file written objections thereto, and upon consideration of the objections filed by the defendants, as well as the plaintiffs' response to those objections, and upon independent review of the pleadings and the record, and the Magistrate Judge's Report and Recommendation, which is adopted as the opinion of this Court,

IT IS ORDERED that the defendants' motion to dismiss the consolidated amended complaint (Docket No. 25) is denied.

### REPORT AND RECOMMENDATION

MITCHELL, United States Magistrate Judge.

#### I. *Recommendation:*

It is respectfully recommended that the defendants' motion to dismiss the consolidated amended complaint (Docket No. 25) be denied.

#### II. *Report:*

In this consolidated action, defendants Fore Systems, Inc. ("Fore Systems") and its executives Eric C. Cooper, Michael I. Green, Robert D. Sansom, Francois J. Bitz, Onat Menzilcioglu and Thomas Gill have filed a motion to dismiss the plaintiffs' consolidated amended complaint.[1]

The plaintiffs filed a consolidated amended complaint on behalf of themselves and a purported class consisting of: "all other persons and entities other than defendants and certain related parties who purchased the common stock of Fore Systems during the period October 17, 1996 through April 1, 1997 ("the purported class period")".[2] The plaintiffs contend that prior to and during the purported class period, the defendants engaged in a fraudulent scheme to mislead investors about Fore System's financial performance and future business prospects so as to artificially inflate the price of its common stock for their personal gain.

Fore Systems manufactures and sells advanced computer networking systems and products that utilize "asynchronous transfer mode" ("ATM") technology.[3] The plaintiffs contend that prior to the purported class period, Fore Systems reported exceptional revenue growth resulting in a dramatic increase in the price of its common stock; that beginning in the latter half of 1996, the Company's earnings growth began to slow; and that prior to and during the purported class period, the defendants masked Fore Systems' declining growth rate and actual operating performance to the detriment of unsuspecting investors.

According to the plaintiffs,

1. Seven related and purported class action lawsuits were filed against Fore Systems and several of its executives for alleged violations of the Securities Exchange Act of 1934 at Civil Action Nos. 97–1265, 97–1307, 97–1393, 97–1405, 97–1469, 97–1540 and 97–1606. In an Order dated October 22, 1997, these related actions were consolidated at the above-captioned case, and the other related actions were ordered closed. Pursuant to the Court's Order of October 22, 1997, plaintiffs Robert K. Bell, Alexander Haff, David Haimbaugh, Michael Roy Underwood and Ed Saber have been designated to serve as "lead plaintiffs" in this consolidated action. We will refer to the lead plaintiffs and the additional

plaintiffs (who are named in ¶ 16 of the consolidated amended complaint) collectively as "the plaintiffs".

2. See, the consolidated amended complaint at ¶ 1.

3. Id. at ¶ 2. As set forth in ¶ 2, "ATM technology utilizes broad bandwidths which allegedly permit the transfer of large amounts of data at substantially greater speeds than conventional networking technologies, and... are therefore capable of handling such applications as video teleconferencing, video-on-demand and Internet commerce."

defendants disseminated materially false and misleading statements and omitted to disclose materially-adverse facts regarding the demand for and market acceptance of Fore's products, the strength of its technologies and its competitiveness and the trends in its business, all of which drove Fore's stock price to a Class Period high of $42.75 per share (on November 15, 1996), and enabled Fore insiders to profit handsomely by selling over $26 million worth of Fore common stock at artificially inflated prices... [4]

The defendants alleged fraudulent acts are said to include: engaging in improper accounting practices, falsely representing that the Company's Asian markets were strong and expanding, while failing to disclose that the Company had experienced several problems with its Asian business plan, including weak sales and lost business opportunities in Japan and Korea, engaging in illicit "inventory parking activities" which included reporting fictitious sales to certain of its distributors and resellers, and failing to disclose that it was significantly reducing prices and/or offering customer rebates on various unsold products.[5]

The plaintiffs assert that due to the defendants' concealment of the Company's deteriorating affairs, Fore Systems' diminishing value was not revealed until April 1, 1997, when the Company disclosed that its growth rate had materially declined and that its earnings would fall far below expectations.[6] In response to this disclosure, Fore Systems' stock declined to $13.06 per share (on April 1, 1997), representing a decline of nearly 70% from the purported class period high of $42.75 per share.[7]

The plaintiffs seek to recover losses they incurred due to the defendants' alleged fraudulent acts. They bring this action pursuant to sections 10(b) and 20(a) of the Securities Exchange Act of 1934 ("the Act"), 15 U.S.C. §§ 78j(b), 78t(a), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5.[8]

The Third Circuit Court of Appeals has explained:

> The first step for a Rule 10b–5 plaintiff is to establish that defendant made a materially false or misleading statement or omitted to state a material fact necessary to make a statement not misleading. Next, plaintiff must establish that defendant acted with scienter and that plaintiff's reliance on defendant's misstatements caused him or her injury. Finally, [if] the claim being asserted is a 'fraud' claim, plaintiff must satisfy the heightened pleading requirements of Federal Rule of Civil Procedure 9(b).

*In Re Burlington Coat Factory Securities Litigation,* 114 F.3d 1410, 1417 (3d Cir.1997) (citations omitted). Also see, *Weiner v. Quaker Oats Co.,* 129 F.3d 310, 315 (3d Cir. 1997).

The defendants have moved to dismiss the consolidated amended complaint pursuant to Rules 9(b) and 12(b)(6), F.R.Civ.P., on the grounds that the plaintiffs have failed to allege a claim of securities fraud with particularity. The defendants argue that the plaintiffs have failed to adequately plead (1) actionable misrepresentations or omissions of material facts and (2) that defendants acted with scienter. In reviewing a motion to dismiss, all well-pleaded allegations of the complaint must be accepted as true and viewed in a light most favorable to the non-movant. *Estelle v. Gamble,* 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976); *Jordan v. Fox,*

---

**4.** See, the consolidated amended complaint at ¶ 4.

**5.** Id. at ¶¶ 4–7.

**6.** Id. at ¶ 10.

**7.** Id.

**8.** Section 10(b) of the Act forbids "manipulative or deceptive acts in connection with the purchase or sale of securities." *Central Bank of Denver, N.A. v. First Interstate Bank of Denver,*

N.A., 511 U.S. 164, 173, 114 S.Ct. 1439, 128 L.Ed.2d 119 (1994). Section 20(a) of the Act provides liability for "controlling persons" in a corporation. 15 U.S.C. § 78t(a). Rule 10b–5 makes it unlawful for "any person, directly or indirectly... [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading." 17 C.F.R. § 240.10b–5(b).

*Rothschild, O'Brien & Frankel,* 20 F.3d 1250, 1261 (3d Cir.1994).

It is mandated in F.R.Civ.P. 9(b) that "all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." While Rule 9(b)'s "particularity requirement has been rigorously applied in securities fraud cases", the "rule has been relaxed somewhat where the factual information is peculiarly within the defendant's knowledge or control." *Burlington Coat Factory, supra,* 114 F.3d at 1417–18. Still,

> even under a relaxed application of Rule 9(b), boilerplate and conclusory allegations will not suffice. Plaintiffs must accompany their legal theory with factual allegations that make their theoretically viable claim plausible.

*Id.* 114 F.3d at 1418 (citation omitted).

Likewise, under the Private Securities Litigation Reform Act of 1995, a complaint must "specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). In addition, the complaint shall "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2).

The consolidated amended complaint satisfies these requirements. The plaintiffs state with sufficient particularity that during the purported class period the defendants (1) issued materially false and misleading financial statements by employing improper revenue recognition practices, and (2) failed to disclose material adverse business trends affecting the Company.

\* *Alleged Improper Accounting Practices:*

The plaintiffs allege that during the quarterly earnings periods ending September 30, 1996 and December 31, 1996, the defendants issued earnings reports and financial statements, which they represented had been prepared in accordance with generally accepted accounting principles ("GAAP"); that these financial statements were materially false and misleading, as defendants employed improper revenue recognition practices, such as "inventory parking", which caused the Company's reported earnings and income to be materially overstated and a breach of GAAP; that defendants' scheme of inventory parking included inducing Fore Systems' distributors or resellers to place wholly fictitious "orders" for Fore Systems' products, or to accept receipt of products they had not agreed to purchase, in exchange for receiving large discounts on Fore Systems' products; and that these "sales" were reported as revenue in the Company's quarterly financial statements during the purported class period in direct contravention of GAAP.[9]

Specifically, it is alleged:

(i) [P]rior to and during the [purported] Class Period, Fore conspired and colluded with Applied Technology Resources, Ltd. ("ATR") and Global Technology Integrator, Ltd. ("GTI"), two Hong Kong based distributors of computer-related products, to engage in a fraudulent inventory parking scheme. Pursuant to this scheme, ATR and/or GTI agreed to engage in a practice of placing "orders" for Fore products that it had not agreed to purchase to help Fore meet its quarterly sales goals. These "transactions" were nothing more than bookkeeping entries. For example, shortly before the close of Fore's fiscal second quarter ended September 30, 1996, Fore's chief financial officer, defendant Thomas Gill, flew to Hong Kong to personally co-ordinate and arrange for the placing of a phony order by ATR and/or GTI for approximately $3 million of Fore product to help Fore "meet" its sales goals and investor expectations for that quarter. Thereafter, in later quarters, Fore reversed its previously-reported sales.

(ii) In exchange for ATR's and GTI's willingness to place those fabricated orders, Fore gave ATR and GTI extraordinary price concessions on the Fore products that ATR and GTI actually agreed to purchase for purposes of resale to real cus-

9. See, consolidated amended complaint at ¶¶ 58, 105–112.

tomers, thereby permitting ATR and GTI to substantially undercut Fore's other Asian distributors and resellers on price. For example, according to an article entitled "Fore May Face Conflict in China Distributor Channel", published in Computer World Hong Kong magazine on November 27, 1997, Fore's price concessions to ATR and GTI were so great that they permitted ATR and GTI to sell Fore products as much as 20% below the wholesale prices that Fore typically charged other Asian distributors and resellers for the same product. As a result of these arrangements, immediately prior to and during the [purported] Class Period, Fore was able to report fictitious sales of Fore products on an as-needed basis in order to help Fore meet its quarterly revenue and earnings targets and to satisfy Company-induced market expectations with respect to the Company's financial results and resulting performance of its shares.[10]

The plaintiffs allege that Fore Systems' senior management, including the individual defendants, were fully aware of and approved of these practices.[11]

In *Burlington Coat Factory, supra,* the Third Circuit Court of Appeals addressed the specificity needed to properly plead accounting fraud as follows: "where plaintiffs allege that defendants distorted certain data disclosed to the public by using unreasonable accounting practices, we have required plaintiffs to state what the unreasonable practices were and how they distorted the disclosed data." 114 F.3d at 1417–18. Here, based on the plaintiffs' allegations recited above, and their averment that the defendants violated specific accounting concepts FASB No. 5, APB No. 10, and FASB No. 48[12], the consolidated amended complaint adequately states a claim of improper accounting practices. Furthermore, we find that a reasonable investor could consider the defendants' alleged improper accounting practices "material" facts for purposes of the instant motion.[13]

\* *Alleged Failure to Disclose Material Adverse Business Trends:*

■ The plaintiffs allege that during the latter half of 1996, the defendants made misleading statements either directly, or indirectly through securities analysts which characterized Fore Systems' business, especially its Asian business, as positive and strong; that these statements contradicted the fact that the Company was experiencing several adverse business trends that negatively impacted the Company's growth, including deterioration of its Asian and Pacific Rim markets, increased competition that cut into demand for its products, and customer complaints arising from Fore Systems' products that required extremely expensive and unanticipated hardware upgrades; and that the defendants profited through these concealments by selling large amounts of their Company stock holdings at artificially-inflated prices in October and November of 1996 and February of 1997 before these problems were disclosed.[14]

This alleged misconduct is stated with particularity. For instance, paragraphs 59–66 of the consolidated amended complaint assert that on July 26, 1996, the defendants issued a press release announcing that Fore Systems was forming an alliance with Japan's Keio University to provide 1,000 ATM-connected computers across its five campuses; that by mid-September of 1996, the Japanese government had abandoned its alliance with Fore Systems and cancelled funding for the above-mentioned Keio University project; that the defendants were privately informed of Japan's decision to cancel funding for said

10. Id. at ¶ 58(b)(i-ii).

11. Id. at ¶ 58(b)(iv).

12. Id. at ¶¶ 105–112.

13. The Third Circuit Court of Appeals has stated that "materiality is a mixed question of law and fact, and the delicate assessments of the inferences a reasonable shareholder would draw from a given set of facts are peculiarly for the trier of fact." *Weiner v. Quaker Oats Co., supra,* 129

F.3d at 317 (citation omitted). "Therefore, only if the alleged misrepresentations or omissions are so obviously unimportant to an investor that reasonable minds cannot differ on the question of materiality is it appropriate for the district court to rule that the allegations are inactionable as a matter of law." *Id.*

14. See, consolidated amended complaint at ¶¶ 53–57.

project, but defendants failed to disclose this information to investors until after the end of the purported class period; that the defendants actively concealed this fact and the softening of its Asian business by developing "inventory parking" schemes with ATR and/or GTI (described above) in order to issue positive, albeit revenue-inflated financial statements for the quarter ending September 30, 1996; and that after cancellation of the Keio University project, the defendants continued to assure market analysts that Fore Systems' financial performance, including its overseas sales, were strong.

At paragraphs 67–77 of the consolidated amended complaint, the plaintiffs state with particularity their assertions that on October 17, 1996, the defendants issued a false and misleading press release touting the Company's falsely-inflated financial results and growth, as well as the purported alliance with Keio University; that defendants issued other misleading communications to the public and to securities analysts in October and November of 1996 which falsely promoted the Company and artificially inflated the price of Fore Systems' stock during the purported class period; and that during this time when the defendants were making materially false and misleading statements as to the Company's performance and growth prospects, the individual defendants began aggressively making insider sales, such that by the end of the purported class period, the individual defendants sold over 645,000 shares of Fore common stock at artificially-inflated prices resulting in total proceeds in excess of $26 million.

The Third Circuit Court of Appeals has reiterated that "the fundamental purpose of the [Securities Exchange] Act [was] to substitute a policy of full disclosure for the philosophy of *caveat emptor* ..." *Weiner v. Quaker Oats Co., supra*, 129 F.3d at 315, quoting *Santa Fe Industries, Inc. v. Green*, 430 U.S. 462, 477, 97 S.Ct. 1292, 51 L.Ed.2d 480 (1977). As such, Rule 10b–5 imposes a duty upon defendants "to disclose any material facts that are necessary to make disclosed material statements, whether mandatory or volunteered, not misleading."

*Craftmatic Securities Litigation v. Kraftsow*, 890 F.2d 628, 641 (3d Cir.1989). The Supreme Court has explained:

> An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote ... Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the "total mix" of information made available.

*TSC Industries, Inc. v. Northway, Inc.*, 426 U.S. 438, 449, 96 S.Ct. 2126, 48 L.Ed.2d 757 (1976). We find that the allegedly misleading statements and omissions attributed to the defendants above are material.

■ Additionally, the plaintiffs' assertion that the defendants made false and misleading statements to securities analysts with the intent that they would disseminate such misleading statements to the public states a cognizable claim. These allegations are stated with particularity [15]; and Courts have ruled that "corporate defendants may be directly liable under [Rule] 10b–5 for providing false or misleading information to third-party securities analysts." *Cooper v. Pickett*, 1998 WL 32678, *7 (9th Cir. Jan.30, 1998).

■ The plaintiffs have also adequately pled that the defendants acted with the requisite scienter. To satisfy the scienter requirement, the plaintiffs must "either (1) identify circumstances indicating conscious or reckless behavior by defendants or (2) allege facts showing both a motive and a clear opportunity for committing the fraud." *Burlington Coat Factory, supra*, 114 F.3d at 1422. As noted by the Court in *Burlington Coat Factory* and discussed above, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires that complaints brought under Rule 10b–5 "state with particularity facts giving rise to a strong inference that the defendant acted with the requisite state of mind." 114 F.3d at 1418–19, n. 6, citing 15 U.S.C. § 78u–4(b)(2).

■ Courts are divided on whether the PSLRA scienter requirement mandates a

---

**15.** Id. at ¶¶ 38–43, 62–66, 71–73, 75, 79–80, 83–84.

showing of "conscious behavior" rather than the less stringent "reckless behavior" or "motive and clear opportunity" factors set forth above. See, *Voit v. Wonderware Corp.,* 977 F.Supp. 363, 373–74 (E.D.Pa.1997) (discussing cases, reviewing PSLRA's legislative history and adopting a "conscious behavior" standard, which requires a plaintiff to allege facts giving rise to a strong inference of knowing or conscious behavior).

We need not determine the proper scienter requirement mandated by the PSLRA, for even under the more rigid "conscious behavior" test, the plaintiffs have adequately pled scienter. That is, the defendants are said to have knowingly: engaged in an "inventory parking scheme" with certain distributors to fraudulently conceal the deteriorating state of the Company's business and to artificially inflate its financial statements [16], engaged in improper accounting practices in violation of GAAP for purposes of revenue recognition [17], and released a false and misleading statement concerning the Company's participation in an aborted project with Keio University in Japan.[18] Clearly, these alleged facts give rise to a strong inference of knowing or conscious behavior.

Therefore, for the reasons set forth above, it is recommended that the defendants' motion to dismiss the consolidated amended complaint be denied.

Within ten (10) days after being served with a copy, any party may serve and file written objections to this Report and Recommendation. Any party opposing the objections shall have seven (7) days from the date of service of objections to respond thereto. Failure to file timely objections may constitute a waiver of any appellate rights.

May 26, 1998.

---

**16.** Id. at ¶ 58(b)(i)-(ii).

**17.** Id. at ¶¶ 107–112.

**18.** Id. at ¶¶ 54(e), 59, 60 and 69.