Carol NOVAK and Robert Nieman, on behalf of themselves and all others similarly situated, Plaintiffs,

v.

Sally Frame KASAKS, Paul E. Francis, Joseph R. Gromek, Gerald S. Armstrong, James J. Burke, Jr., Merrill Lynch & Co., Merrill Lynch, Pierce, Fenner & Smith Incorporated, Merrill Lynch Capital Partners, Inc., ML IBK Positions, Inc., Merchant Banking L.P. No. III, Kecalp, Inc., AnnTaylor Stores Corporation and AnnTaylor, Inc., Defendants.

No. 96 Civ. 3073(AGS).

United States District Court, S.D. New York.

Nov. 12, 1998.

---

Milberg Weiss Bershad Hynes & Lerach LLP, New York City, NY, Finkelstein & Associates, San Diego, CA, Rossbacher & Associates, Los Angeles, CA, Abbey & Ellis, New York City, NY, for plaintiffs.

Skadden, Arps, Slate, Meagher & Flom, for AnnTaylor Stores Corporation, AnnTaylor, Inc., Sally Frame Kasaks, Paul E. Francis and Joseph R. Gromek, New York City, NY.

Rogers & Wells, for Merrill Lynch & Co. and Merrill Lynch, Pierce, Fenner & Smith Incorporated, New York City, NY.

Wachtell, Lipton, Rosen & Katz, for Gerald S. Armstrong, James J. Burke, Jr., Merrill Lynch Capital Partners, Inc., ML IBK Positions, Inc., Merchant Banking L.P. No. III and Kecalp, Inc., New York City, NY.

### AMENDED OPINION AND ORDER

SCHWARTZ, District Judge.

By Opinion and Order dated March 10, 1998, the Court dismissed the complaint in this action pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure (failure to state a claim) and Section 21D(b)(3) of the Securities Exchange Act of 1934 (failure to plead fraud with particularity and an inability to do so). *Novak v. Kasaks*, 997 F.Supp. 425 (S.D.N.Y.1998). Now before the Court are an amended complaint and a new set of motions to dismiss. For the reasons set forth below, defendants' motions to dismiss are granted.

Familiarity with the Court's earlier Order is assumed. Briefly, plaintiffs had alleged that defendants artificially inflated the price of AnnTaylor stock by hiding excess inventory and failing to take write-downs at the proper times. The Court found that plaintiffs had failed to plead facts giving rise to a strong inference of defendants' fraudulent intent, and therefore had not satisfied the scienter pleading requirements of the Private Securities Litigation Reform Act of 1995 ("PSLRA"). *Novak*, 997 F.Supp. at 430–31. More specifically, we found that

> the complaint fails to allege with sufficient specificity that at the time the AnnTaylor defendants made favorable statements to securities analysts, they were aware that much of their inventory was worthless or seriously overvalued, or were reckless as to whether that was the case.

*Id.* at 431.

The Court also found that plaintiffs had failed properly to allege that the AnnTaylor defendants' actions were wrongful, rather than simply a matter of business judgment; had failed to specify the individuals from whom they had gleaned information included in the complaint; had failed properly to allege that the Merrill Lynch defendants were aware of any scheme to hide inventory; and had failed to plead a claim for control person or control group liability. *Id.* at 431–35. The Court now finds that the amended complaint fails to correct these deficiencies, or even to address them in any meaningful way.

■ We turn first to the basis for the amended complaint. In our earlier Opinion, we found that the complaint was "woefully devoid" of particularity in stating the basis for plaintiffs' allegations. Plaintiffs had stated only that they relied upon "investigation of their counsel, which included a review of AnnTaylor's SEC filings, securities analysts reports and advisories about the Company, press releases issued by the Company, media reports about the Company and discussions with consultants." *Novak*, 997 F.Supp. at 431.

The amended complaint states:

> Plaintiffs' investigation has included, among other things, a review of: (i) the public filings of AnnTaylor Stores Corporation with the Securities and Exchange Commission (the "SEC"); (ii) press releases and other public statements issued by defendants; (iii) published reports and news articles regarding the Company; (iv) internal AnnTaylor documents obtained through plaintiffs' investigation; and (v) documents produced by various non-parties in this litigation, as well as confidential communications with certain former Ann-Taylor employees and independent consultants.

(Am.Compl. at 1.)

Items (i), (ii), and (iii) reiterate sources of information referenced in the original complaint. Item (iv) appears to refer to weekly reports used at AnnTaylor management meetings. We discuss these more fully below. Item (v) refers to other documents; the Court, however is unable to ascertain from the body of the amended complaint what these documents might be, what information they might contain, or who provided them to plaintiffs. This lack of particularity in pleading is exactly what led the Court to dismiss the original complaint.

Item (v) also refers to communications with anonymous employees and consultants. In our earlier opinion, we stated that if "unnamed consultants provided information forming the basis for these allegations, then the consultants should have been named in the complaint." *Novak*, 997 F.Supp. at 431. Plaintiffs have chosen to ignore this clear mandate. As we discuss in more detail be-

low, the Court therefore rejects as improperly pleaded allegations based upon reports from these anonymous sources.

Turning next to the content of the amended complaint, the Court finds that it contains few allegations not included in the original complaint. What new allegations there are appear to be directed at demonstrating that the AnnTaylor defendants knew that the box-and-hold inventory "was nearly worthless and could not and would not be sold at its stated value." (Am.Compl.¶ 35.) The allegations involve documents allegedly available to the AnnTaylor defendants and conversations which allegedly took place at management meetings.

Plaintiffs allege, and the Court accepts for purposes of this motion, that at a meeting held each Monday, the AnnTaylor defendants received a weekly report detailing inventory levels. (Am.Compl.¶ 34.) The total amount of inventory was reported, and was then broken down into the amount at AnnTaylor Stores, at AnnTaylor Lofts, and in "Box and Hold." The box and hold number was further subdivided into seasonal lines (e.g., "Fall 92"). The Court finds that these documents, if they exist, do nothing more than confirm a fact already acknowledged by AnnTaylor— that AnnTaylor held merchandise in warehouses and ultimately marked down this merchandise. *Novak,* 997 F.Supp. at 432.

In addition, the amended complaint alleges that

> numerous internal discussions occurred between defendants Kasaks, Francis and Gromek and other senior AnnTaylor executives at these regular merchandise "recap" meetings and throughout the Class Period regarding the Box & Hold inventories, during which many AnnTaylor executives demanded that defendants Kasaks, Francis and Gromek end the Box & Hold practice as it made no business sense and was growing out of control. Defendants' response to all of these demands was that AnnTaylor could not "afford" to eliminate or write-down the Box & Hold inventory because doing so would "kill" the Company's reported financial results and/or profit margins and damage the Company on

> "Wall Street.... Defendants Kasaks, Francis and Gromek each knew, at all relevant times, that this inventory due to its age and condition was nearly worthless and could not and would not be sold at its stated value."

(Am.Compl.¶ 35.)

Paragraph 35 provides an excellent example of the improper pleading which leads the Court once again to dismiss the complaint. First, we can only assume that it is based upon reports by the anonymous "former employees" discussed *supra.* Plaintiffs' failure to identify these individuals ignores the clear mandate of the Court in our earlier opinion, and is contrary to the particularity requirements of the PSLRA. 15 U.S.C. § 78u–4(b)(1).

Second, even if these allegations were properly pled, they represent nothing more than disagreement by certain AnnTaylor executives with business decisions made by the AnnTaylor defendants. The paragraph alleges only that certain executives disagreed with aspects of the box and hold practice, and that the AnnTaylor defendants exercised business judgment in deciding when to take markdowns. We rejected this approach in our earlier opinion:

> "The implication is that inventory was placed in containers and stored for some period of time or held for sale in later seasons. That action, even if it were a fact, is one essentially of business judgment. If there is more than business judgment involved, i.e., something wrongful, then plaintiffs were required under Rule 9(b) to set forth, in detail, the particulars of that wrongfulness."

*Novak,* 997 F.Supp. at 431.

Third, plaintiffs offer absolutely no support for the conclusory, unsupported and inflammatory allegation that the AnnTaylor defendants knew the box and hold inventory to be "nearly worthless." We criticized this pleading technique, too, in our earlier opinion: "Plaintiffs have ... relied virtually exclusively on conclusory language (e.g., 'inventories had *exploded to dangerously bloated levels* ')

and hot words (e.g., 'plunged into a liquidity crisis')". *Id.*

The amended complaint also alleges that: A January 22, 1996 Weekly Report ... demonstrates that as of January 22, 1996, *over six months after the end of the Class Period,* 384,674 out of a total ... 2.99 million apparel units (or 13% of total apparel units) and 75,556 out of a total ... 371,967 shoe units (or 20% of total shoe units) remained inside of "Box & Hold" as of that date, consisting of merchandise going as far back as the *Spring of 1993!* The reported value of this inventory, which consists primarily of 1993 and 1994 Class Period merchandise was in excess of $14 million as of January 22, 1996, or 14% of AnnTaylor's total publicly-reported inventory at the end of fiscal 1995. Yet, its actual value was nearly zero.

(Am.Compl.¶ 37.)

This paragraph, too, suffers from numerous pleading defects. First, the Court finds no relevance in a document describing the situation which existed, as plaintiffs emphatically put it, *over six months after the end of the Class Period.* Second, the Court is unable to ascertain the meaning of the "primarily." Third, and perhaps most importantly, plaintiffs offer no support for the allegation that the value of the box and hold inventory was "nearly zero," nor do they attempt to demonstrate why $14 million was not a proper value to assign to the inventory. By plaintiffs' own count, there were 460,230 units of warehoused inventory. Dividing this number into $14 million results in an average value of $30 per unit. Plaintiffs offer no explanation as to why that number is an excessive average valuation for upscale clothing and shoes.

In sum, the Court finds that plaintiffs have once again failed properly to plead scienter on the part of the AnnTaylor defendants. We turn next to the amended complaint's scienter allegations in regard to the Merrill Lynch defendants. In our earlier opinion, we dismissed the claims as to defendants Burke and Armstrong because there was no allegation that they had access to information not available to the AnnTaylor defendants (who we had already found lacked scienter),

and because plaintiffs were unable or unwilling to provide details as to Armstrong's and Burke's actual knowledge at any given point in time, and as to whether Armstrong and Burke had communicated this knowledge to the other Merrill Lynch defendants. *Novak,* 997 F.Supp. at 433–35.

Although this discussion consumed two full pages of a nine-page decision, plaintiffs respond to the Court's concerns in only a single paragraph of the amended complaint:

Given the nature and size of this fraudulent [box and hold] scheme, it is inconceivable that defendants Kasaks, Gromek and Francis did not share this data with Merrill Lynch and, specifically, defendants Armstrong and Burke, who were defendant Francis's former business partners, oversaw Merrill Lynch's controlling investment in AnnTaylor, and sat on the Compensation Committee of AnnTaylor's Board of Directors and decided, among other things, the compensation packages of defendants Kasaks, Francis and Gromek.

(Am.Compl.¶ 42.)

It is not acceptable to the Court that plaintiffs would base an allegation on nothing more than the concept that it is inconceivable that something did not happen, especially in light of our earlier opinion, in which we repeatedly emphasized the PSLRA's requirement of pleading with particularity. We need only adopt a statement we made in dismissing the previous complaint: "The complaint's allegations as to scienter on the part of any of the Merrill Lynch defendants, including Armstrong and Burke, are thus not pled with the particularity required by the PSLRA, nor supported by an adequate factual background." *Novak,* 997 F.Supp. at 434–35.

 Turning to control person or control group liability, we again need only adopt the views expressed in our earlier opinion, as plaintiffs have chosen to include no new allegations in the amended complaint:

In order to establish a claim for control person liability under Section 20, plaintiffs must establish (1) a primary violation of the 1934 Act, (2) control of the primary violator by the defendant, and (3) the de-

fendant's culpability in the fraud perpetrated by the controlled person. *See Securities & Exchange Com'n v. First Jersey Securities, Inc.*, 101 F.3d 1450, 1472 (2d Cir.1996). First, as the Court has found, plaintiffs have failed properly to plead a violation of the 1934 Act. Second, as we also have noted, plaintiffs have failed properly to allege scienter and/or culpability on the part of "Merrill Lynch." Even had we found a properly pled violation of the 1934 Act, we would not automatically impute this violation to "Merrill Lynch" as a controlling entity. *See Baesa*, 969 F.Supp. at 242 ("[T]he law in this circuit is clear that a subsidiary's fraud cannot be automatically imputed to its corporate parent."). *See also Chill v. General Elec. Co.*, 101 F.3d 263, 270 (2d Cir.1996) (holding that a parent company would, at the very least, have to have been deliberately blind to its subsidiary's fraud in order to have the requisite scienter).

*Novak*, 997 F.Supp. at 435.

■ Finally the Court notes that the amended complaint expands plaintiffs' allegations as to defendants' violation of Generally Accepted Accounting Principles ("GAAP"). Plaintiffs, however, offer no support for their contention that "[a]llegations that defendants violated specific Generally Accepted Accounting Principles ("GAAP") state a claim for securities fraud based on improper accounting practices." (Pl.Mem. at 18.) The cases cited by plaintiffs clearly state that violations of GAAP may give rise to an inference of fraudulent intent only when coupled with other specific and properly pled allegations of fraud.[1] As plaintiffs have failed to plead fraud with particularity, the GAAP allegations are insufficient to state a claim under the PSLRA.

In sum, as we did with the original complaint, the Court finds that the absence of adequate allegations of scienter in the amended complaint is fatal to plaintiffs' claims under Section 10(b) of the 1934 Act and Rule 10b–5, and that plaintiffs have failed to meet the minimal requirements to plead control person liability. The complaint will be dismissed.

■ Although leave to file an amended complaint is to be generously granted, *see, e.g., Luce v. Edelstein*, 802 F.2d 49, 56 (2d Cir.1986), such a grant is not appropriate where it would be futile to permit amendment, *see San Leandro Emergency Med. Group v. Philip Morris Cos.*, 75 F.3d 801, 815 (2d Cir.1996). In the instant matter, plaintiffs were given leave to amend the original complaint at the time we dismissed it. In doing so, plaintiffs ignored every mandate and suggestion given by the Court, and submitted an amended complaint substantially identical to the original complaint. We now find that it would be futile to permit further amendment.

As this decision represents a final adjudication of this action, the PSLRA requires that the Court determine whether the parties and their attorneys have complied with Fed. R.Civ.P. 11(b). 15 U.S.C. § 78u–4(c)(1). The Court finds that they have so complied.

### CONCLUSION

For the reasons set forth above, defendants' motions to dismiss the amended complaint under Fed.R.Civ.P. 12(b)(6) and Section 21D(b)(3) of the 1934 Act are granted. The amended complaint is dismissed with prejudice. The Clerk of the Court is directed to close the file in this action.

SO ORDERED.

---

1. *Bell v. Fore Sys., Inc.*, 17 F.Supp.2d 433, 437, No. 97–civ–1265, 1998 WL 535573, at *3–*4 (W.D.Pa. June 29, 1998) (GAAP allegations coupled with detailed description of alleged fraudulent transactions sufficient); *Gross v. Medaphis Corp.*, 977 F.Supp. 1463, 1466, 1472 (N.D.Ga. 1997) (GAAP allegations coupled with allegation that defendants provided customers with secret side letters relieving them of their obligations sufficient); *Marksman Partners, L.P. v. Chantal Pharm. Corp.*, 927 F.Supp. 1297, 1313 (C.D.Cal. 1996) (GAAP violations must be "combined with other circumstances suggesting fraudulent intent"); *In re Digi Int'l, Inc. Securities Litig.*, 6 F.Supp.2d 1089, 1098 (same); *Cherednichenko v. Quarterback Corp.*, [Current Tr. Binder], Fed.Sec. L.Rep. (CCH) ¶ 90,108 (C.D.Cal. Nov. 26 1997) (same).