**Carol NOVAK, Robert Nieman, Joseph Desena, on behalf of themselves and all' others similarly situated, Plain-tiffs–Appellants,**

v.

**Sally Frame KASAKS, Paul E. Francis, Joseph R. Gromek, AnnTaylor Stores Corporation and AnnTaylor, Inc., De-fendants–Appellees,**

Merrill Lynch & Company, Merrill Lynch, Pierce, Fenner & Smith Inc., Merrill Lynch Capital Partners, Inc., ML IBK Positions, Inc., Merchant Banking L.P. No. III, Kecalp, Inc., Gerald S. Armstrong, James J. Burke, Jr., Defendants.

No. 98–9641.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1999.

Decided June 21, 2000.

Keith M. Fleischman (Joshua H. Vinik, Salvatore J. Graziano, on the brief), Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, for Plaintiffs–Appellants.

Robert E. Zimet (Susan Saltzstein, Tom M. Fini, Joseph N. Sacca, on the brief), Skadden, Arps, Slate, Meagher & Flom LLP, New York, NY, for Defendants–Appellees.

Harvey J. Goldschmid, General Counsel (Jacob H. Stillman, Solicitor, Eric Summergrad, Deputy Solicitor, Luis de la Torre, Attorney, on the brief), Securities and Exchange Commission, Washington, DC, for Amicus Curiae.

Before: WALKER, LEVAL, and POOLER, Circuit Judges.

JOHN M. WALKER, Jr., Circuit Judge:

In 1996, plaintiffs-appellants filed this securities fraud class action, alleging violations of sections 10(b) and 20(a) of the Securities Exchange Act ("the 1934 Act") and Rule 10b–5 promulgated thereunder. In two opinions issued in 1998, the district court dismissed both the original complaint and the plaintiffs' amended complaint pursuant to Fed.R.Civ.P. 12(b)(6) and 15 U.S.C. § 78u–4(b)(3)(A) for failure to plead with sufficient particularity facts supporting a strong inference that the defendants had acted fraudulently. *See Novak v. Kasaks,* 997 F.Supp. 425 (S.D.N.Y.1998) (*"Novak I"*) (dismissing original complaint); *Novak v. Kasaks,* 26 F.Supp.2d 658 (S.D.N.Y.1998) (*"Novak II"*) (dismissing amended complaint). On appeal, the appellants contend that the district judge erred in granting the defendants' motions to dismiss.

In light of Second Circuit precedent and the provisions of the Private Securities Litigation Reform Act ("PSLRA"), we hold that the district court erred in: (1) concluding that the plaintiffs had failed to plead sufficient facts to support a strong inference of fraudulent intent; and (2) imposing an exceedingly onerous burden on the plaintiffs with respect to their obligation to plead facts with particularity. We see no persuasive alternative grounds for upholding the district court's dismissal of the complaint. Accordingly, we vacate the judgment of the district court and remand for further proceedings consistent with these determinations. In addition, we instruct the district court to allow the plaintiffs to replead to the extent they wish to do so in light of this opinion.

## BACKGROUND

On April 25, 1996, plaintiffs Carol Novak and Robert Nieman brought this action on behalf of all purchasers of the common stock of the AnnTaylor Stores Corporation between February 3, 1994, and May 4, 1995 (the "Class Period"). In their complaint, the plaintiffs named two groups of defendants: (1) *the AnnTaylor defendants,* both the corporation itself—which, through its wholly-owned subsidiary, defendant AnnTaylor, Inc., is a specialty retailer of women's clothing, shoes, and accessories—and several officers at the highest level of management; and (2) *the Merrill Lynch defendants,* a group of entities and individuals that collectively held a dominant share of AnnTaylor stock and sold a significant fraction of their holdings during the Class Period.

The complaint—in both its original and amended forms—essentially alleges that, during the Class Period, the defendants

made, or controlled others who made, materially false and misleading statements and omissions concerning the financial performance of AnnTaylor ("the Company"), primarily by failing properly to account for millions of dollars of inventory. According to the plaintiffs, the defendants knowingly and intentionally issued financial statements that overstated AnnTaylor's financial condition by accounting for inventory that they knew to be obsolete and nearly worthless at inflated values and by deliberately failing to adhere to the Company's publicly stated markdown policy. The following facts are taken largely from the plaintiffs' complaint.

The plaintiffs' specific allegations focus on AnnTaylor's so-called "Box and Hold" practice, whereby a substantial and growing quantity of out-of-date inventory was stored in several warehouses during the Class Period without being marked down. Internal Company documents ("Weekly Reports")—distributed at regular Monday morning merchandise meetings in which the AnnTaylor defendants participated—distinguished between regular inventory and "Box and Hold" inventory. According to the complaint, these reports demonstrated that: (1) much of the "Box and Hold" inventory was several years old and thus unlikely to be sold at full price, if at all; and (2) the levels of such inventory grew significantly during the Class Period, from about 10% to about 34% of total inventory. However, AnnTaylor's public financial statements did not distinguish between types of inventory, nor did AnnTaylor write off any of the "Box and Hold" inventory during the Class Period, allegedly in violation of Generally Accepted Accounting Principles ("GAAP") that required markdowns under these circumstances. Instead, the defendants made or caused to be made a series of positive statements to the public about the status of AnnTaylor's inventories, describing them at various points during the Class Period as "under control," "in good shape," and at "reasonable" or "expected" levels; stating that "no major or unusual markdowns were anticipated"; and attributing rising levels of inventory to growth, expansion, and planned future sales.

The plaintiffs contend that this course of conduct amounts to securities fraud. Had AnnTaylor taken appropriate write-downs, they argue, the Company's earnings would have been substantially lower than reported. Thus, the AnnTaylor defendants' alleged deception painted too rosy a picture of the Company's current performance and future prospects and kept the company's stock price at an artificially high level during the Class Period. According to the amended complaint, during this time,

> many AnnTaylor executives demanded that [the individual AnnTaylor] defendants ... end the Box & Hold practice as it made no business sense and was growing out of control. Defendants' response ... was that AnnTaylor could not "afford" to eliminate or write-down the Box & Hold inventory because doing so would "kill" the Company's reported financial results and/or profit margins and damage the Company on "Wall Street."

Ultimately, the defendants were forced to publicly acknowledge serious inventory problems—i.e., that inventories were too high and liquidation would result in much lower fiscal 1995 earnings than expected—at which point AnnTaylor stock prices fell precipitously, to the plaintiffs' detriment.

On July 1, 1996, in response to these allegations, the defendants moved to dismiss the action, and on August 16, 1996, the district judge granted a motion by the defendants to stay all discovery pending a ruling on the motions to dismiss pursuant to 15 U.S.C. § 78u–4(b)(3)(B).

On March 10, 1998, the district court issued an opinion and order granting the defendants' motions to dismiss the complaint. *See Novak I,* 997 F.Supp. at 426. The court concluded that "the fatal defect in the complaint lies in its allegations of scienter." *Id.* at 430. Specifically, the plaintiffs had "fail[ed] to plead facts giving

rise to a strong inference of fraudulent intent" in that they did not "allege with sufficient specificity that … defendants … were aware that much of their inventory was worthless or seriously overvalued, or were reckless as to whether that was the case." *Id.* at 430–31. According to the district court, in order to meet the pleading requirement, the plaintiffs needed to identify the confidential sources of their information, *see id.* at 431–32, include written documentation of the "Box and Hold" practice in their complaint, *see id.* at 432, and allege facts showing that the Merrill Lynch defendants actually knew about "Box and Hold," *see id.* at 434.

On April 9, 1998, the plaintiffs filed an amended complaint. The defendants thereafter served motions to dismiss. On November 9, 1998, the district court dismissed the plaintiffs' amended complaint with prejudice. *See Novak II,* 26 F.Supp.2d at 660. In the district court's view, the amended complaint failed to remedy the defects of the original one, including lack of particularity in pleading, unnamed sources, and lack of specific evidence of the Merrill Lynch defendants' knowledge of the "Box and Hold" practice. *See id.* at 660–62. In addition, the district court found "that ·it would be futile to permit further amendment" of the complaint and thus dismissed it with prejudice. *Id.* at 663. This appeal followed.

The plaintiffs subsequently reached a settlement with the Merrill Lynch defendants and withdrew the appeal as against them. · Accordingly, our discussion pertains solely to the claims against the Ann-Taylor defendants. In particular, we do not reach the question of control-person liability under § 20(a) of the 1934· Act, since this claim pertains primarily to the Merrill Lynch defendants. We are not concerned with § 20(a) liability as to the AnnTaylor defendants because they are also alleged to be primary violators under the 1934 Act, who may be held directly liable under § 10(b).

## DISCUSSION

■ We review *de novo* a district court's order dismissing a complaint on the pleadings and accept as true all facts alleged in the complaint. *See Stevelman v. Alias Research Inc.,* 174 F.3d 79, 83 (2d Cir.1999) (citing *Chill v. General Elec. Co.,* 101 F.3d 263, 267 (2d Cir.1996)). In this case, we are called upon to decide principally whether the district court, in assessing the sufficiency of the pleadings, applied appropriate standards in light of our precedents and the provisions of the PSLRA and whether it erred in concluding that the plaintiffs had failed to state a claim. We must also decide whether, even if the district court erred, there are alternative grounds for affirming the dismissal of the plaintiffs' § 10(b) claims.

### I. *Sufficiency of the Pleadings*

The landscape of securities fraud litigation has been transformed in recent years by the passage of the PSLRA. This case requires us to determine the impact of two provisions in this legislation on the pleading standard for scienter and the required degree of particularity in pleading in this circuit.

### A. *The PSLRA and Anti–Fraud Provisions in Federal Securities Laws*

Section 10(b) of the 1934 Act, 15 U.S.C. § 78j(b), and Rule 10b–5 promulgated thereunder, 17 C.F.R. § 240.10b–5, prohibit fraudulent activities in connection with securities transactions. Section 10(b) makes it unlawful

> [t]o use or employ, in connection with the purchase or sale of any security …, any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors.

15 U.S.C. § 78j(b). Rule 10b–5 specifies the following actions among the types of behavior proscribed by the statute:

To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading. . . .

17 C.F.R. § 240.10b–5.

■ In order to state a claim under these provisions, a complaint must allege that the defendants acted with scienter. *See, e.g., Chill,* 101 F.3d at 266. This scienter requirement for a private action under Rule 10b–5 has been firmly established for at least a generation. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (holding that no "private cause of action for damages will lie under § 10(b) and Rule 10b–5 in the absence of any allegation of 'scienter'—intent to deceive, manipulate, or defraud"); *Lanza v. Drexel & Co.,* 479 F.2d 1277, 1301 (2d Cir.1973) (in banc) ("Other cases in this circuit clearly indicate that 'facts amounting to *scienter,* intent to defraud, reckless disregard for the truth, or knowing use of a device, scheme or artifice to defraud' are essential to the imposition of liability.") (quoting *Shemtob v. Shearson, Hammill & Co.,* 448 F.2d 442, 445 (2d Cir.1971)). This case pertains not to the scienter requirement itself, but rather to the pleading requirement for scienter in the securities fraud context. Prior to the passage of the PSLRA, we had decided that, in order to state a claim for securities fraud, plaintiffs had to allege facts giving rise to "a strong inference of fraudulent intent." *Acito v. IMCERA Group, Inc.,* 47 F.3d 47, 52 (2d Cir.1995).

■ In addition to pleading scienter, it is well-established that a securities fraud complaint must also plead certain facts with particularity in order to state a claim. Fed.R.Civ.P. 9(b) requires that, whenever a complaint contains allegations of fraud, "the circumstances constituting fraud . . . shall be stated with particularity." *See also Chill,* 101 F.3d at 267 (noting that "the actual fraudulent statements or conduct and the fraud alleged must be stated

with particularity") (internal citations omitted). "[A] complaint making such allegations must '(1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" *Shields v. Citytrust Bancorp, Inc.,* 25 F.3d 1124, 1128 (2d Cir.1994) (quoting *Mills v. Polar Molecular Corp.,* 12 F.3d 1170, 1175 (2d Cir.1993)).

In 1995, Congress amended the 1934 Act through passage of the PSLRA. *See* Private Securities Litigation Reform Act of 1995, Pub.L. No. 104–67, 109 Stat. 737 (codified at 15 U.S.C. §§ 77k, 77l, 77z–1, 77z–2, 78a, 78j–1, 78t, 78u, 78u–4, 78u–5). Legislators were apparently motivated in large part by a perceived need to deter strike suits wherein opportunistic private plaintiffs file securities fraud claims of dubious merit in order to exact large settlement recoveries. *See* H.R. Conf. Rep. No. 104–369, at 31 (1995) (noting "significant evidence of abuse in private securities lawsuits," including "the routine filing of lawsuits against issuers of securities and others whenever there is a significant change in an issuer's stock price, without regard to any underlying culpability of the issuer," and "the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle"), *reprinted in* 1995 U.S.C.C.A.N. 730, 730.

In order "to curtail the filing of meritless lawsuits," the PSLRA imposed stringent procedural requirements on plaintiffs pursuing private securities fraud actions. *See id.* at 41. This case concerns two of these provisions in particular. First, the statute requires that,

[i]n any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, *state with partic-*

*ularity facts giving rise to a strong inference that the defendant acted with the required state of mind.*

15 U.S.C. § 78u–4(b)(2) (emphasis added) [hereinafter "paragraph (b)(2)"]. Second, the statute requires that,

[i]n any private action arising under this chapter in which the plaintiff alleges that the defendant—

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, *if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.*

15 U.S.C. § 78u–4(b)(1) (emphasis added) [hereinafter "paragraph (b)(1)"]. In addition, § 21D(b)(3)(A) of the PSLRA requires courts to dismiss complaints that fail to meet the pleading requirements of paragraphs (b)(1) and (b)(2). *See* 15 U.S.C. § 78u–4(b)(3)(A). We must determine the impact of these new requirements in order to decide whether the plaintiffs in this case have pleaded sufficient facts with enough particularity to state a claim under the 1934 Act.

## B. The Pleading Standard for Scienter

### 1. The Second Circuit's Pre–PSLRA Pleading Standard

We can easily summarize the pleading standard for scienter that prevailed in this circuit prior to the PSLRA:

[P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent. "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness."

*Acito,* 47 F.3d at 52 (quoting *Shields,* 25 F.3d at 1128) (internal citations omitted). However, this statement of the standard conceals the complexity and uncertainty that often surround its application. This difficulty in application stems, at least in part, from the "inevitable tension" between the interests in deterring securities fraud and deterring strike suits. *See In re Time Warner Inc. Sec. Litig.,* 9 F.3d 259, 263 (2d Cir.1993). As a result, different courts applying the pleading standard to differing factual circumstances may reach seemingly disparate results. *See id.* at 264. Nevertheless, we discern some basic patterns in our case law under § 10(b) and Rule 10b–5 that help to provide substance to the general language of the standard itself.

We described the type of motive and opportunity required to plead scienter under our pre-reform standard as follows:

Motive would entail concrete benefits that could be realized by one or more of the false statements and wrongful nondisclosures alleged. Opportunity would entail the means and likely prospect of achieving concrete benefits by the means alleged.

*Shields,* 25 F.3d at 1130. Plaintiffs could not proceed based on motives possessed by virtually all corporate insiders, including: (1) the desire to maintain a high corporate credit rating, *see San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc.,* 75 F.3d 801, 814 (2d Cir.1996), or otherwise sustain "the appearance of corporate profitability, or of the success of an investment," *Chill,* 101 F.3d at 268; and (2) the desire to maintain a high stock price in order to increase executive compensation, *see Acito,* 47 F.3d at 54, or prolong the benefits of holding corporate office, *see Shields,* 25 F.3d at 1130. Rather, plaintiffs had to allege that defendants benefitted in some concrete and personal way from the purported

fraud. This requirement was generally met when corporate insiders were alleged to have misrepresented to the public material facts about the corporation's performance or prospects in order to keep the stock price artificially high while they sold their own shares at a profit. *See, e.g., Stevelman,* 174 F.3d at 85; *Goldman v. Belden,* 754 F.2d 1059, 1070 (2d Cir.1985). Accordingly, in the ordinary case, adequate motive arose from the desire to profit from extensive insider sales.

Plaintiffs could also meet the pre-PSLRA pleading standard by alleging facts that constituted strong circumstantial evidence of conscious misbehavior or recklessness on the part of defendants. Intentional misconduct is easily identified since it encompasses deliberate illegal behavior, such as securities trading by insiders privy to undisclosed and material information, *see Simon DeBartolo Group, L.P. v. Richard E. Jacobs Group, Inc.,* 186 F.3d 157, 168–69 (2d Cir.1999), or knowing sale of a company's stock at an unwarranted discount, *see Schoenbaum v. Firstbrook,* 405 F.2d 215, 219 (2d Cir.1968) (in banc).

Recklessness is harder to identify with such precision and consistency. In 1978, when we first held that recklessness suffices to plead scienter under § 10(b) and Rule 10b–5, we defined reckless conduct as:

> at the least, conduct which is "highly unreasonable" and which represents "an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it."

*Rolf v. Blyth, Eastman Dillon & Co., Inc.,* 570 F.2d 38, 47 (2d Cir.1978) (quoting *Sanders v. John Nuveen & Co.,* 554 F.2d 790, 793 (7th Cir.1977)) (ellipsis in original). Similarly, we later noted that " '[a]n egregious refusal to see the obvious, or to investigate the doubtful, may in some cases give rise to an inference of ... recklessness.' " *Chill,* 101 F.3d at 269 (quoting *Goldman v. McMahan, Brafman, Morgan*

*& Co.,* 706 F.Supp. 256, 259 (S.D.N.Y. 1989)) (ellipsis in original).

However, these general standards offer little insight into precisely what actions and behaviors constitute recklessness sufficient for § 10(b) liability. It is the actual facts of our securities fraud cases that provide the most concrete guidance as to the types of allegations required to meet the pre-PSLRA pleading standard in this circuit.

According to these cases, securities fraud claims typically have sufficed to state a claim based on recklessness when they have specifically alleged defendants' knowledge of facts or access to information contradicting their public statements. Under such circumstances, defendants knew or, more importantly, should have known that they were misrepresenting material facts related to the corporation. Thus, for example, the pleading standard was met where the plaintiffs alleged that the defendants made or authorized statements that sales to China would be "an important new source of revenue" when they knew or should have known that Chinese import restrictions in place at the time would severely limit such sales. *See Cosmas v. Hassett,* 886 F.2d 8, 12 (2d Cir.1989). Similarly, the pleading standard was met where the plaintiffs alleged that the defendants released to the investing public several highly positive predictions about the marketing prospects of a computer system to record hotel guests' long-distance telephone calls when they knew or should have known several facts about the system and its consumers that revealed "grave uncertainties and problems concerning future sales of" the system. *Goldman,* 754 F.2d at 1063, 1070.

Under certain circumstances, we have found allegations of recklessness to be sufficient where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud. Thus, the pleading standard was met where the plaintiff alleged that the

defendant, his broker, consistently reassured the plaintiff that the investment advisor responsible for the plaintiff's portfolio "knew what he was doing" but never actually investigated the advisor's decisions to determine "whether there was a basis for the [defendant's] assertions." *Rolf,* 570 F.2d at 47–48. Similarly, the pleading standard was met where the defendant allegedly included false statements in SEC filings despite "the obviously evasive and suspicious statements made to him" by the corporate officials upon whom he was relying for this information and despite outside counsel's recommendation that these statements not be included. *SEC v. McNulty,* 137 F.3d 732, 741 (2d Cir.1998).

At the same time, however, we have identified several important limitations on the scope of liability for securities fraud based on reckless conduct. First, we have refused to allow plaintiffs to proceed with allegations of "fraud by hindsight." *See Stevelman,* 174 F.3d at 85. Corporate officials need not be clairvoyant; they are only responsible for revealing those material facts reasonably available to them. *See Denny v. Barber,* 576 F.2d 465, 470 (2d Cir.1978). Thus, allegations that defendants should have anticipated future events and made certain disclosures earlier than they actually did do not suffice to make out a claim of securities fraud. *See Acito,* 47 F.3d at 53.

Second, as long as the public statements are consistent with reasonably available data, corporate officials need not present an overly gloomy or cautious picture of current performance and future prospects. *See Stevelman,* 174 F.3d at 85; *Shields,* 25 F.3d at 1129–30. Where plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information. *See San Leandro,* 75 F.3d at 812 ("Plaintiffs' unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.").

Third, there are limits to the scope of liability for failure adequately to monitor the allegedly fraudulent behavior of others. Thus, the failure of a non-fiduciary accounting firm to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability. *See Decker v. Massey–Ferguson, Ltd.,* 681 F.2d 111, 120 (2d Cir.1982). Similarly, the failure of a parent company to interpret extraordinarily positive performance by its subsidiary—specifically, the "unprecedented and dramatically increasing profitability" of a particular form of trading—as a sign of problems and thus to investigate further does not amount to recklessness under the securities laws. *See Chill,* 101 F.3d at 269–70.

Finally, allegations of GAAP violations or accounting irregularities, standing alone, are insufficient to state a securities fraud claim. *See Stevelman,* 174 F.3d at 84; *Chill,* 101 F.3d at 270. Only where such allegations are coupled with evidence of "corresponding fraudulent intent," *Chill,* 101 F.3d at 270, might they be sufficient.

We now examine to what extent these lessons from our prior case law have survived the recent reform of the securities laws.

2. Implications of the PSLRA for the Pleading Standard for Scienter in this Circuit

Courts have disagreed on the proper interpretation of the new pleading requirement imposed by paragraph (b)(2) in light of the text of the PSLRA and its legislative history. They have generally come to one of two conclusions:

(1) The statute effectively adopts the Second Circuit's pleading standard for scienter wholesale, and thus plaintiffs may continue to state a claim by pleading either motive and opportunity or strong circumstantial evidence of reck-

lessness or conscious misbehavior. *See In re Advanta Corp. Sec. Litig.,* 180 F.3d 525 (3d Cir.1999); *Press v. Chemical Invest. Servs. Corp.,* 166 F.3d 529, 538 (2d Cir.1999) (dicta); *Rubinstein v. Skyteller, Inc.,* 48 F.Supp.2d 315, 320 (S.D.N.Y.1999) (following *Press* ).

(2) The statute strengthens the Second Circuit's standard by rejecting the simple pleading of motive and opportunity. *See Bryant v. Avado Brands, Inc.,* 187 F.3d 1271, 1283 (11th Cir.1999); *In re Silicon Graphics Inc. Sec. Litig.,* 183 F.3d 970, 979 (9th Cir.1999); *In re Comshare, Inc. Sec. Litig.,* 183 F.3d 542, 550–51 (6th Cir.1999); *Novak I,* 997. F.Supp. at 430; *In re Glenayre Tech., Inc. Sec. Litig.,* 982 F.Supp. 294, 298 (S.D.N.Y.1997); *In re Baesa Sec. Litig.,* 969 F.Supp. 238, 241–42 (S.D.N.Y.1997).

Our own review of the text and legislative history leads us to a middle ground. We conclude that the PSLRA effectively raised the nationwide pleading standard to that previously existing in this circuit and no higher (with the exception of the "with particularity" requirement). At the same time, however, we believe that Congress's failure to include language about motive and opportunity suggests that we need not be wedded to these concepts in articulating the prevailing standard. We are led to these conclusions by the considerations that follow.

 In order to gauge the implications of paragraph (b)(2), we apply familiar canons of statutory construction. We look first to the text of the statute. If that language is plain and its meaning sufficiently clear, we need look no further. *See Connecticut Nat'l Bank v. Germain,* 503 U.S. 249, 254, 112 S.Ct. 1146, 117 L.Ed.2d 391 (1992). Only if the text of the statute is not unambiguous do we turn for guidance to legislative history and the purposes of the statute. *See Dowling v. United States,* 473 U.S. 207, 218, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985). Applying these principles, we conclude that the enactment of paragraph (b)(2) did not change the basic pleading standard for scienter in this circuit.

In this case, our interpretive task begins and ends with the text of the statute. In drafting paragraph (b)(2), Congress specifically incorporated this circuit's "strong inference" language to define the pleading standard for securities fraud cases. *Compare* 15 U.S.C. § 78u–4(b)(2) (requiring plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"), *with Acito,* 47 F.3d at 52 ("[P]laintiffs must allege facts that give rise to a strong inference of fraudulent intent."). We agree with the Third Circuit that this "use of the Second Circuit's language compels the conclusion that the Reform Act establishes a pleading standard approximately equal in stringency to that of the Second Circuit." *In re Advanta Corp.,* 180 F.3d at 534. *Cf. United States v. Johnson,* 14 F.3d 766, 770 (2d Cir.1994) (finding that Congress's use of "substantially identical language" to that of an earlier statute "bespeaks an intention to import" judicial interpretations of that language into the new statute).

Given the absence of ambiguity in the statutory text, no resort to legislative history or the purposes of the PSLRA is required. In any event, there is nothing in these sources that would alter our conclusion. As far as the general purposes of the PSLRA are concerned, Congress plainly sought to impose a stricter nationwide pleading standard and did so. But this purpose does not require raising the standard above that of this circuit, particularly in light of the explicit Congressional recognition that our pre-PSLRA standard was the most stringent in the nation. *See* H.R. Conf. Rep. No. 104–369, at 41. "In many jurisdictions, adoption of a 'strong inference' standard will substantially heighten the barriers to pleading scienter, a result Congress expressly intended. Moreover, even in jurisdictions already employing the Second Circuit standard, the additional requirement that plaintiffs

state facts 'with particularity' represents a heightening of the standard." *In re Advanta Corp.*, 180 F.3d at 534.

Meanwhile, in our view, as is so often the case with legislative history generally, the legislative history of the PSLRA contains "conflicting expressions of legislative intent" with respect to the pleading requirement. *Id.* at 533. For example, while the Conference Committee rejected language from the Senate bill that would have adopted the Second Circuit rule wholesale, including language about motive and opportunity and recklessness, *see* H.R. Conf. Rep. No. 104–369, at 41 & 48 n. 23, the Senate Committee reporting the bill stated that it was proposing not "a new and untested pleading standard that would generate additional litigation," but rather "a uniform standard modeled upon the pleading standard of the Second Circuit." S.Rep. No. 104–98, at 15 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 694 (noting that courts interpreting the proposed "strong inference" pleading standard might find Second Circuit case law "instructive").

■ When all is said and done, we believe that the enactment of paragraph (b)(2) did not change the basic pleading standard for scienter in this circuit (except by the addition of the words "with particularity"). Accordingly, we hold that the PSLRA adopted our "strong inference" standard: In order to plead scienter, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind," as required by the language of the Act itself. Although litigants and lower courts need and should not employ or rely on magic words such as "motive and opportunity," we believe that our prior case law may be helpful in providing guidance as to how the "strong inference" standard may be met. Therefore, in applying this standard, district courts should look to the cases and factors discussed in Section I.B.1 above to determine whether plaintiffs have pleaded facts giving rise to the requisite "strong inference." These cases suggest, in brief, that the inference may arise where the complaint sufficiently alleges that the defendants: (1) benefitted in a concrete and personal way from the purported fraud, *see supra* at page 307; (2) engaged in deliberately illegal behavior, *see supra* at page 308; (3) knew facts or had access to information suggesting that their public statements were not accurate, *see supra* at page 308–09; or (4) failed to check information they had a duty to monitor, *see supra* at pages 308–09. We now turn to the complaint in this case to determine whether the plaintiffs have met their burden to plead scienter.

3. Strong Inference of Fraudulent Intent on the Part of the AnnTaylor Defendants

The district court concluded that the plaintiffs had failed to plead facts giving rise to a strong inference of the defendants' fraudulent intent, as required to state a claim under § 10(b). We disagree.

■ According to the complaint, the AnnTaylor defendants knew at all relevant times that the Company had serious inventory problems that they sought to disguise by adopting the "Box and Hold" scheme. By refusing to mark down inventory they knew to be "worthless," "obsolete," and "unsalable," the defendants acted "intentionally and deliberately" to artificially inflate AnnTaylor's reported financial results. They discussed the need to mark down inventory but refused to do so because that would damage the Company's financial prospects. Further, in approving the inventory management practices of "Box and Hold," the defendants knowingly sanctioned procedures that violated the Company's own markdown policy, as stated in the Company's public filings. In doing so, they caused those filings to be materially misleading in that the disclosed policy no longer reflected actual practice. Lastly, despite knowledge of the true reasons for rising inventory levels, the defendants made repeated statements to the investment community either offering false

reassurances that inventory was under control or giving false explanations for its growth. In short, the Complaint alleges that the defendants engaged in conscious misstatements with the intent to deceive. There is no doubt that this pleading satisfies the standard for scienter under *Hochfelder*, and the requirement of the PSLRA that plaintiffs state facts with particularity that give rise to a strong inference of the required state of mind.

■ In the end, we believe that the district court applied the correct standard but erroneously found that this standard was not met on these pleadings. According to the district court, the scienter requirement can be satisfied by pleading either "conscious recklessness"—i.e., a state of mind "approximating actual intent, and not merely a heightened form of negligence"—or "actual intent." *Novak I*, 997 F.Supp. at 430. This was an accurate statement of the law. However, the district court believed that the facts pleaded by the plaintiffs supported nothing more than an inference that the managers of AnnTaylor disagreed over matters of business judgment, such as the valuation of inventory and the timing of markdowns. *See Novak II*, 26 F.Supp.2d at 660. This was incorrect as a matter of law. When managers deliberately make materially false statements concerning inventory with the intent to deceive the investment community, they have engaged in conduct actionable under the securities laws.

### C. Particularity of the Facts Pleaded

The district court also found the facts pleaded by the plaintiffs insufficiently particularized, in large part because they did not reveal the identity of the personal sources of their critical factual allegations. We disagree with the district court's reasoning and accordingly vacate and remand for further proceedings consistent with the discussion that follows.

■ As discussed above, Rule 9(b) has long required plaintiffs in securities fraud cases to state "the circumstances constituting fraud ... with particularity." The PSLRA imposed an additional requirement: whenever plaintiffs allege, on information and belief, that defendants made material misstatements or omissions, the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u–4(b)(1). This requirement plainly applies in this case. In numerous places in their complaint, the plaintiffs allege, based on information and belief, that the AnnTaylor defendants made materially misleading statements or omissions. Most importantly, they allege that the defendants made false statements concerning the value of inventory because "Box and Hold" merchandise was "unsalable," "obsolete," and "nearly worthless," and its "actual value was nearly zero." In order to survive at this stage, the complaint must state with particularity sufficient facts to support the belief that the "Box and Hold" inventory was of limited value, and accordingly that the defendants' positive public statements concerning inventory growth were false and misleading.

The district court concluded that the plaintiffs had failed to meet these particularity requirements, in substantial part because they failed to reveal their confidential sources for some of the facts on which their belief in the essential worthlessness of the "Box and Hold" inventory was based. *See Novak I*, 997 F.Supp. at 431–32; *Novak II*, 26 F.Supp.2d at 660–61. The lower court found the plaintiffs' allegations in this respect at worst "conclusory, unsupported and inflammatory," and at best "based upon reports by ... anonymous 'former employees'" who should have been identified by name. *Novak II*, 26 F.Supp.2d at 661. The district court's reasoning and conclusions were flawed in several respects.

For one thing, the complaint provides specific facts concerning the Company's significant write-off of inventory directly following the Class Period, which tends to support the plaintiffs' contention that in-

ventory was seriously overvalued at the time the purportedly misleading statements were made. Specifically, the plaintiffs allege that: (1) in AnnTaylor's May 1995 reporting of its first quarter fiscal 1995 results, the Company "admitted to analysts that its inventories were too high" and that "inventory liquidation" would follow; (2) in AnnTaylor's July 29, 1995 10–Q filed with the SEC, it "admitted that the decrease in the Company's gross profit percentage was attributable to 'increased cost of goods sold as a percentage of net sales, *primarily resulting from markdowns*'"; and (3) a January 22, 1996 Weekly Report showed that even six months after the Class Period, substantial amounts of "Box and Hold" inventory still dated from 1993 and 1994, which supports the inference that inventory during the Class Period was similarly dated. Thus, the complaint identifies with particularity several documentary sources that support the plaintiffs' belief that serious inventory problems existed during the Class Period itself.

We recognize that the complaint does not state with particularity every fact upon which this belief was based, since it is apparent that there were also personal sources who were not specifically identified. However, plaintiffs who rely on confidential sources are not always required to name those sources, even when they make allegations on information and belief concerning false or misleading statements, as here.

First, there is nothing in the caselaw of this circuit that requires plaintiffs to reveal confidential sources at the pleading stage. The defendants rely heavily on *Segan v. Dreyfus Corp.*, 513 F.2d 695 (2d Cir.1975), in which we held that a plaintiff's complaint was insufficiently specific and rejected the argument that further disclosure would, among other things, identify a confidential informant. *See id.* at 696. But in *Dreyfus*, we held only that the plaintiff had to plead additional facts, not that the plaintiff was required to reveal the name of the

informant. *See id.* ("A suit charging fraud may not be based on *facts* so secret that the defendants cannot be told what they are.") (emphasis added). Some district courts in this circuit have on occasion stated that Rule 9(b) requires plaintiffs in securities fraud · cases to allege the "sources that support the alleged specific facts," *e.g., Blanchard v. Katz*, 705 F.Supp. 1011, 1012 (S.D.N.Y.1989); *Crystal v. Foy*, 562 F.Supp. 422, 425 (S.D.N.Y.1983), but in no case have they dismissed a complaint for failure to identify confidential sources.

 Second, while paragraph (b)(1) may compel revelation of confidential sources under certain circumstances, such circumstances are not necessarily present in this case. The defendants point to district court decisions outside this circuit that hold or imply that the PSLRA generally requires plaintiffs to include the names of their confidential sources. *See In re Silicon Graphics Inc. Sec. Litig.*, 970 F.Supp. 746, 763 (N.D.Cal.1997); *In re Aetna Inc. Sec. Litig.*, No. CIV. A. MDL 1219, 1999 WL 354527, at *4 (E.D.Pa. May 26, 1999). However, this rule is based on a misreading of the legislative history of the PSLRA. Specifically, the court in *Silicon Graphics* relied primarily on the hyperbolic statements of legislators attempting (unsuccessfully) to amend the proposed Act to lighten plaintiffs' pleading burden. *See Silicon Graphics*, 970 F.Supp. at 763–64. In fact, the applicable provision of the law as ultimately enacted requires plaintiffs to plead only facts and makes no mention of the sources of these facts. *See* 15 U.S.C. § 78u–4(b)(1).

 More fundamentally, our reading of the PSLRA rejects any notion that confidential sources must be named as a general matter. In our view, notwithstanding the use of the word "all," paragraph (b)(1) does not require that plaintiffs plead with particularity every single fact upon which their beliefs concerning false or misleading statements are based. Rather, plaintiffs need only plead with particularity *sufficient* facts to support

those beliefs.[1] Accordingly, where plaintiffs rely on confidential personal sources but also on other facts, they need not name their sources as long as the latter facts provide an adequate basis for believing that the defendants' statements were false. Moreover, even if personal sources must be identified, there is no requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged. In both of these situations, the plaintiffs will have pleaded enough facts to support their belief, even though some arguably relevant facts have been left out. Accordingly, a complaint can meet the new pleading requirement imposed by paragraph (b)(1) by providing documentary evidence and/or a sufficient general description of the personal sources of the plaintiffs' beliefs.

Thus, we find no requirement in existing law that, in the ordinary course, complaints in securities fraud cases must name confidential sources, and we see no reason to impose such a requirement under the circumstances of this case. "The primary purpose of Rule 9(b) is to afford defendant fair notice of the plaintiff's claim and the factual ground upon which it is based." *Ross v. Bolton,* 904 F.2d 819, 823 (2d Cir. 1990). This purpose, which also underlies paragraph (b)(1), can be served without requiring plaintiffs to name their confidential sources as long as they supply sufficient specific facts to support their allegations. Imposing a general requirement of disclosure of confidential sources serves no legitimate pleading purpose while it could deter informants from providing critical information to investigators in meritorious cases or invite retaliation against them.

We express no view as to whether the plaintiffs' allegations in this case were sufficiently particularized. Instead, we remand to the district court with instructions to: (1) allow the plaintiffs to replead in light of our discussion above; and (2) reconsider the particularity of the plaintiffs' pleadings in light of the proper standards.

## II. *Alternative Grounds for Dismissal*

The appellees argue that we still may affirm the district court's dismissal because: (1) the appellants have not adequately alleged that statements made by securities analysts can be attributed to the AnnTaylor defendants; and (2) the alleged false and misleading statements made during the Class Period are not actionable in any event. We reject both arguments.

 Under the law of this circuit, plaintiffs may state a claim against corporate officials for false and misleading information disseminated through analysts' reports by alleging that the officials either: (1) "intentionally foster[ed] a mistaken belief concerning a material fact" that was incorporated into reports; or (2) adopted or placed their "imprimatur" on the reports. *See Elkind v. Liggett & Myers, Inc.,* 635 F.2d 156, 163–64 (2d Cir.1980). This was plainly the case here. The plaintiffs alleged that the AnnTaylor defendants both made misstatements that were later incorporated into analysts' reports *and* subsequently (at least implicitly) adopted the contents of those reports. These allegations were sufficiently detailed to meet the pleading threshold because generally the circumstances of the statements—including dates and participants—were particularized. *See Acito,* 47 F.3d at 51.

---

1. Paragraph (b)(1) is strangely drafted. Reading "all" literally would produce illogical results that Congress cannot have intended. Contrary to the clearly expressed purpose of the PSLRA, it would allow complaints to survive dismissal where "all" the facts supporting the plaintiff's information and belief were pled, but those facts were patently insufficient to support that belief. Equally peculiarly, it would require dismissal where the complaint pled facts fully sufficient to support a convincing inference if any known facts were omitted. Our reading of the provision focuses on whether the facts alleged are sufficient to support a reasonable belief as to the misleading nature of the statement or omission.

■■■ Moreover, the types of statements the defendants are alleged to have made or adopted are actionable. While statements containing simple economic projections, expressions of optimism, and other puffery are insufficient, *see, e.g., Friedman v. Mohasco Corp.,* 929 F.2d 77, 79 (2d Cir.1991), defendants may be liable for misrepresentations of existing facts, *see In re Prudential Sec. Inc. Ltd. Partnerships Litig.,* 930 F.Supp. 68, 74–75 (S.D.N.Y.1996). Here, the complaint alleges that the defendants did more than just offer rosy predictions; the defendants stated that the inventory situation was "in good shape" or "under control" while they allegedly knew that the contrary was true. Assuming, as we must at this stage, the accuracy of the plaintiffs' allegations about AnnTaylor's "Box and Hold" practices, these statements were plainly false and misleading.

## CONCLUSION

For the foregoing reasons, we hold, first, that: (a) in order to plead scienter in securities fraud cases, plaintiffs must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind"; and (b) the plaintiffs here pleaded sufficient facts to establish a strong inference of fraudulent intent on the part of the AnnTaylor defendants. Second, we hold that the district court erred, under the circumstances of this case, by requiring the plaintiffs to reveal the names of their confidential sources in order to meet the particularity requirements of the PSLRA. On remand, we instruct the district court to: (a) permit the plaintiffs to replead; and (b) evaluate their pleadings anew in light of our interpretation of these requirements. Finally, we see no alternative grounds for affirming the district court's dismissal of the plaintiffs' complaint. Accordingly, the judgment of the district court is vacated and the case remanded for further proceedings consistent with these rulings.