**In re DORAL FINANCIAL CORP. SECURITIES LITIGATION.**

No. 05 MD 1706 (JSR).

United States District Court, S.D. New York.

July 7, 2008.

Jeffrey Charles Zwerling, Joseph Lipofsky, Richard A. Speirs, Ona Ramesh Shah, Zwerling, Schachter & Zwerling, Robert I. Harwood, Jeffrey Michael Norton, Wechsler Harwood LLP, Ken H. Chang, Marian Rosner, Michael Adam Schwartz, Wolf

Popper LLP, Shelley Thompson, Eric James Belfi, Labaton Sucharow, LLP, Eduard Korsinsky, Zimmerman Levi & Korsinsky, LLP, Frank Rocco Schirripa, Jay Paul Saltzman, Schoengold Sporn Laitman & Lometti, P.C., Olimpio Lee Squitieri, Squitieri & Fearon LLP, Jack Gerald Fruchter, Abraham Fruchter & Twersky LLP, Aaron Lee Brody, Stull Stull & Brody, Christopher Scott Hinton, The Hinton Law Firm, Leigh R. Lasky, Lasky & Rifkind, Ltd., New York, NY, Russell James Gunman, Samuel Howard Rudman, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Melville, NY, Arthur L. Shingler, III, Spector, Roseman & Kodroff, San Deigo, CA, David R. Scott, Scott & Scott, LLC, Colchester, CT, Darren T. Kaplan, Gregory E. Keller, Chitwood Harley Harnes LLP, Great Neck, NY, Mark A. Topaz, Richard A. Maniskas, Schiffrin & Barroway, L.L.P., Radnor, PA, Glenn Carl James–Hernandez, James Law Offices, Guaynabo, PR, Nelson Rivera–Cabrera, Nelson Rivera Cabrera Law Office, John E. Mudd, John E. Mudd Law Office, Eric M. Quetglas–Jordan, Jose F. Quetglas, Quetglas Law Office, San Juan, PR, for Plaintiffs.

Heidi L. Rodriguez–Benitez, Nestor Mendez–Gomez, Pietrantoni, Mendez & Alvarez, Enrique Peral, Munoz Boneta Benitez Peral & Bruqueras, Beatriz Annexy–Guevara, Rafael Escalera–Rodriguez, Reichard & Escalera, Modesto L. Rodriguez–Suarez, Marichal & Hernandez, San Juan, PR, Jennifer L. Kroman, Matthew David Slater, Cleary Gottlieb Steen & Hamilton, LLP, Kelly Marie Hnatt, Michael Richard Young, Willkie Farr & Gallagher LLP, Seth Robert Goldman, Mintz Levin Cohn Ferris Glovsky & Popeo, P.C., Jeffrey Burton Sklaroff, Jesus E. Cuza, John L. McManus, Greenberg Traurig, LLP, Barry Wayne Rashkover, Lynn Ann Dummett, Sidley Austin LLP, Gary John Hacker, Skadden, Arps, Slate, Meagher & Flom LLP, Elliot H. Scherker, New York, NY, Thomas C. Green, Sidley Austin LLP, Diana L. Weiss, James Andrew Meyers, Kenneth Y. Turnbull, Orrick, Herrington & Sutcliffe, LLP, Washington, DC, Cory W. Eichhorn, Greenberg Traurig, P.A., Ft. Lauderdale, FL, Jonathan B. Gaskin, Orrick, Herrington & Sutcliffe LLP, San Francisco, CA, for Defendants.

Mario Alba, Jr., Samuel Howard Rudman, Coughlin, Stoia, Geller, Rudman & Robbins, LLP, Melville, NY, Aaron Lee Brody, Stull Stull & Brody, New York, NY, for Movants.

## MEMORANDUM ORDER

JED S. RAKOFF, District Judge.

Defendant PricewaterhouseCoopers LLP ("PwC"), the last remaining defendant in this multi-district private securities fraud litigation originally assigned to the Honorable Richard Owen and now reassigned to the undersigned, moves to dismiss the Consolidated Amended Complaint. For the reasons set forth below, PwC's motion is granted.

According to the Consolidated Amended Complaint brought on behalf of a class of purchasers of Doral Financial Corp. ("Doral") stock, Doral is a financial services company that engages in, *inter alia,* mortgage and commercial banking, and that conducts activities principally in Puerto Rico and New York City. Consolidated Amended Complaint ("Complaint") ¶ 2. Defendant PwC was Doral's independent financial auditor from 2000–2005 and issued four audit reports on Doral between 2001 and 2005. *Id.* ¶¶ 39, 237–41. In 2005, PwC also issued a "Sarbanes–Oxley" report on Doral's internal controls over its financial reporting. *Id.* ¶ 242.

On April 19, 2005, Doral announced that it would be restating its financial statements for the years 2000 to 2004. *Id.* ¶ 10. The restatements showed generally that, since 2000, Doral had overstated its pretax income by approximately $920 million and understated its debt by approximately $3.3 billion. *Id.* ¶ 3.

One aspect of Doral's business involved Doral's sale of "more than $4 billion of fixed rate non-conforming mortgages to [various banks]. In connection with the 'sales,' Doral retained a portion of the interest to be paid on the mortgages— known as an interest-only strip ('IO Strip')—and booked a gain on the sale of the mortgages. Doral then valued its growing pool of IO Strips utilizing certain assumptions...." *Id.* However, according to the Complaint, "Doral did not truly 'sell' the mortgages but instead was simply borrowing money which was collateralized by the mortgages. Indeed, through side deals and oral agreements, Doral provided the 'purchaser' with full recourse rights that were far beyond the scope of the limited recourse rights provided for in the written contracts between the parties, thereby rendering the transactions as loans." *Id.* Moreover, "the assumptions utilized by Doral to value its IO Strips were not sound or independent but rather were manufactured by Defendants to conceal losses in the Company's portfolio of IO Strips." *Id.* (internal quotation marks omitted). These two frauds account for most of the changes in Doral's restated financial statements. *See, e.g., id.* ¶ 74.

■■■■ According to the Complaint, Doral was able to conceal these frauds because the four audits and one report that PwC issued for Doral between 2000 and 2005 were materially false. On this basis, plaintiffs allege that PwC violated Section 10(b) of the Securities and Exchange Act of 1934 and Rule 10b–5 promulgated thereunder.

However, the Private Securities Litigation Reform Act of 1995 ("PSLRA") requires a plaintiff bringing such an action to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u–4(b)(2). For Section 10(b) and Rule 10b–5 actions, the required state of mind is "scienter," that is, an intent "to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* —— U.S. ——, 127 S.Ct. 2499, 2504, 168 L.Ed.2d 179 (2007). In order for an inference of scienter to be "strong," the inference must be such that "a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* A plaintiff may satisfy this burden by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.,* 493 F.3d 87, 99 (2d Cir.2007). In this context, recklessness means conduct that is, "at the least, ... highly unreasonable and which represents an extreme departure from the standards of ordinary care ... to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Chill v. General Elec. Co.,* 101 F.3d 263, 269 (2d Cir.1996).

■■■■ Where, as here, a defendant is an independent accountant, "the failure ... to identify problems with the defendant-company's internal controls and accounting practices does not constitute reckless conduct sufficient for § 10(b) liability." *Novak v. Kasaks,* 216 F.3d 300, 309 (2d Cir. 2000). Similarly, "allegations of [violations of Generally Accepted Accounting Principles ("GAAP")] or accounting irregularities, standing alone, are insufficient to

state a securities fraud claim" against an independent accountant. *Id.* "Only where such allegations are coupled with evidence of 'corresponding fraudulent intent,' might they be sufficient." *Id.* (citations omitted). Stated a different way, the recklessness required to hold a "non-fiduciary accountant" liable for fraud "must, in fact, approximate an actual intent to aid in the fraud being perpetrated by the audited company." *Rothman v. Gregor,* 220 F.3d 81, 98 (2d Cir.2000). Further, " '[w]here plaintiffs contend defendants had access to contrary facts, they must specifically identify the reports or statements containing this information.' " *Teamsters Local 445 Freight Division Pension Fund v. Dynex Capital Inc.,* 531 F.3d 190, 196 (2d Cir. 2008) (quoting *Novak,* 216 F.3d at 309).

■ Here, plaintiffs' principal contention is that they have sufficiently pleaded "recklessness" as to satisfy the PSLRA.[1] A strong inference of recklessness, they claim, can be inferred from 1) the long time period over which Doral's fraud occurred; 2) the extent of Doral's fraud; and 3) PwC's alleged violations of GAAP and of Generally Accepted Auditing Standards ("GAAS") in conducting its audits of Doral. But in the context of the entire Complaint, none of these allegations gives rise to the requisite strong inference.

The first major element of the fraud alleged in the Complaint is that Doral engaged in "side deals and oral agreements" that turned what appeared to be sales into loans. Complaint ¶ 3. Plaintiffs argue that, at the least, PwC was reckless in failing to discover the side deals. In the Complaint itself, however, these agreements are alleged to be "secret side agreements" concealed from anyone but management. *See, e.g., id.* ¶ 87. Similarly, the Complaint alleges that Doral engaged in "a deliberate practice of conscious misconduct at the highest levels of [its] management . . . designed to surreptitiously mask the true terms and conditions of transactions." *Id.* ¶ 196. Taken as a whole, these allegations themselves suggest that PwC did not discover the fraud, not because of recklessness, but because Doral's management hid the fraud from PwC just as it did from the public at large.

This competing inference is strengthened by consideration of the Complaint's allegations concerning the second major prong of Doral's fraud—faulty valuation of Doral's IO strips. Plaintiffs argue that PwC was reckless in not having discovered that Doral's valuation of the strips was problematic. In this regard, the Complaint does allege that PwC could have discovered that Doral's "IO valuation model did not reflect current market valuation practices." Complaint ¶ 271. The Complaint also alleges, however, that part of Doral's fraudulent activity involved obtaining what Doral described as "external valuations" of the IO strips from seemingly independent parties that were secretly "manipulated" by Doral and its employees. *Id.* ¶¶ 64, 65. This manipulation included a former Doral director inducing an individual who worked for Morgan Stanley to "stamp[ ]" the valuations with a Morgan Stanley authorization, although Morgan Stanley had not authorized this individual

---

1. Although plaintiffs also claim in passing to have adequately pled motive and opportunity as well, they do not in fact allege facts sufficient to show motive. Their allegations of motive come down to the allegation that PwC received fees from Doral for auditing, consulting, and tax services and wished to continue to receive fees. Complaint §§ 280–281. This general allegation that PwC earned fees from Doral is insufficient to plead motive. *See In re Oxford Health Plans, Inc. Sec. Litig.,* 51 F.Supp.2d 290, 294 (S.D.N.Y.1999) ("[G]eneralized economic interests are insufficient to establish motive of an accounting firm to commit fraud.").

to perform the valuations." *Id.* ¶ 67. More generally, according to the Complaint, "Morgan Stanley and [the other third party] Popular Securities were regurgitating the valuations provided to them by Doral, as opposed to independently valuing the IO Strips." *Id.* ¶ 68. These allegations themselves undercut plaintiffs' claims against PwC, because under the relevant auditing standard, "[w]hen evidential matter can be obtained from independent sources outside an entity, it provides greater assurance of reliability for the purposes of an independent audit than that secured solely within the entity." U.S. Auditing Standard AU § 326A.21(a). Accordingly, given plaintiffs' extensive allegations that Doral falsified "independent" data on which PwC could properly have relied, the inference that PwC was reckless is not as compelling as the inference that PwC was, like the public, duped by Doral.

Accordingly, in view of the Complaint's own allegations about the secretive and manipulative manner in which Doral accomplished its fraud, it is impossible to draw a strong inference of PwC's scienter from either the length or extent of the fraud, or both, because the competing inference that PwC was also tricked by Doral is far more compelling.

As noted, plaintiffs also rely on the allegations that PwC violated GAAP and GAAS in conducting its audits of Doral. However, allegations that an independent auditor violated GAAP and GAAS *may* be sufficient to establish scienter "[o]nly where such allegations are coupled with evidence of 'corresponding fraudulent intent.'" *Novak*, 216 F.3d at 309. There is no such evidence in this Complaint.

In addition to their three general themes, plaintiffs also point to certain other allegations in the Complaint as adding to their showing, but none in fact does.

For example, plaintiffs point to the allegation that a confidential informant, who was a "former Doral internal auditor[,] stated that he personally attended [Doral] Audit Committee meetings where representatives from defendant PwC were in attendance and the reports of the Internal Audit Department[ [which raised questions about the sufficiency of Doral's internal control] were discussed." Complaint ¶ 261. This allegation, however, is so vague as to be meaningless, because it contains no time frame within which the meetings occurred, no indication of where within the PwC hierarchy the "representatives" fell, and no information regarding how extensively or in what manner the reports were discussed. At most, the confidential informant's information may raise an inference that PwC was negligent in not following up on such discussions, but it certainly does not show the conscious turning away from the true facts required for recklessness.

The other allegations to which plaintiffs point are even more generalized and ambiguous than the information from the confidential informant. Plaintiffs allege that PwC received over $6 million in fees from Doral between 2004 and 2004. Complaint ¶ 280. They also allege that PwC has been Doral's auditor since 1977 and "had virtually limitless access to information concerning the Company's operations," *id.* ¶ 276, that PwC "provided Doral with substantial non-audit services during the Class Period," *id.*, and that "PwC's personnel were regularly present at the Company's offices and had continual access to, and knowledge of Doral's internal accounting records, its confidential financial and non-public[ ] business documents and employees." *Id.* ¶ 277. None of these allegations shows anything more than that PwC was Doral's auditor, a fact which is wholly insufficient to show PwC's scienter.

Without multiplying examples ad nauseam, the point is that, on the face of the Complaint itself, the inference that PwC was a victim of Doral's fraud is far more compelling than the inference that PwC acted with scienter. Nor was plaintiffs' counsel able to adduce at oral argument any additional information that would warrant giving plaintiffs leave to amend the already amended Complaint.

Accordingly, PwC's motion to dismiss is granted, and the Clerk of the Court is directed to enter final judgment dismissing the Complaint with prejudice, close all outstanding items on the docket, and notify the Multi–District Litigation panel that this litigation is now finished.

SO ORDERED.