OPINION OF THE COURT
FUENTES, Circuit Judge.
Plaintiffs appeal from the District Court’s dismissal of their securities fraud claim for failing to comply with the heightened pleading requirements of the Private Securities Litigation Reform Act (“PSLRA”), 15 U.S.C. § 78u-4 et seq., and Federal Rule of Civil Procedure 9(b). Plaintiffs contend that the District Court misapplied the rigorous pleading requirements of the PSLRA and Rule 9(b). Plaintiffs also contend that the District Court erred in denying them leave to amend their complaint for a second time. We affirm substantially for the reasons expressed in the thorough and persuasive opinion of the District Court. We add the following discussion to underscore our own agreement with that decision.
I.
Plaintiffs invested approximately $2.1 million in Collective Communications Corporation (“Collective”), a start-up company formed in the late 1990s to market a secure wireless information network that would enable corporate databases to communicate with personal digital assistants. After Collective filed for bankruptcy, Plaintiffs brought an action alleging claims for, among others, securities fraud under § 10(b) of the Securities Exchange Act of 1934, 15 U.S.C. § 78j(b), and Rule 10b-5 against several defendants, including Atul Chowdhry and his relatives Neil and Sunita Chowdhry; Collective’s outside attorney Stephen M. Rosenberg; and Rosenberg’s former law firms, Cowan Liebowitz & Latinan, P.C. (“Cowan Liebowitz”) and Jenkens & Gilchrest Parker Chapin, LLP *273 (“Jenkens”).[1] As stated in the Amended Complaint, the Plaintiffs allege that the Defendants, principally Atul Chowdhry and Rosenberg, made several oral and written misrepresentations to induce the Plaintiffs to invest in Collective, including: (1) that Collective’s liabilities were $250,000, a figure that failed to account for actual accrued liabilities to Tata Infoteeh, Ltd. (“Tata”), and unpaid bills to outside firms; (2) that Collective had a proprietary right in the billing software to be licensed from Tata, when in reality Tata refused to negotiate a sub-license with Collective until outstanding bills had been paid; and (3) that Autek Corporation, a corporation affiliated "with Chowdhry, was owed money by Collective, when in fact Autek’s corporate status had been revoked.
The District Court dismissed the Plaintiffs’ initial complaint, noting that “it is nearly impossible to discern from the instant pleading precisely which defendants are alleged to have made direct misstatements to which plaintiffs, what those misstatements were, when they were made, how they were false, and why each defendant is alleged to have acted with the requisite degree of scienter.” App. at 280. The District Court sua sponte granted Plaintiffs leave to amend, an opportunity which the Plaintiffs failed to seize. As the District Court noted, “[g]iven an opportunity to file an Amended Complaint, Plaintiffs made a strategic decision to include very little additional information. In sum and substance, the Amended Complaint is highly similar to the original Complaint [but for a few new paragraphs].” App. at 7.
II.
Our review of the District Court’s dismissal of the Amended Complaint pursuant to Rule 12(b)(6) is plenary. See In re Alpharma, Inc. Sec. Litig., 372 F.3d 137, 146 (3d Cir.2004). We must “accept as true all of the factual allegations in the complaint as well as the reasonable inferences that can be drawn from them and may dismiss the complaint only if it is clear that no relief could be granted under any set of facts that could be proved consistent with the allegations.” Id. (quotation and citation omitted). The District Court’s denial of leave to amend the Amended Complaint is reviewed for an abuse of discretion. See id. at 153. Leave to amend may be denied where the amendment would cause undue delay or prejudice, or where the amendment would be futile. Id. We have jurisdiction over the District Court’s order pursuant to 28 U.S.C. § 1291.
III.
Plaintiffs raise several arguments on appeal, all of which we find unpersuasive. First, we reject the Plaintiffs’ argument that the rigorous pleading requirements of the PSLRA should be relaxed in this case to the extent that no class action lawsuit is involved, which the Plaintiffs contend was the principal focus of the PSLRA. We note that 15 U.S.C. § 78u-4(b), which contains the heightened pleading requirements applicable to this matter, is titled “Requirements for securities fraud actions” and plainly states that it applies to “any private action under this chapter,” without reference to whether the action is brought as a class action or not. Moreover, we note that a different provision of the PSLRA, 15 U.S.C. § 78u-4(a), specifically states that it applies only to “Private *274 class actions,” thus reinforcing our view that Congress intended 15 U.S.C. § 78u-4(b) to apply to all private actions. See 15 U.S.C. § 78u-4(a) (stating that “[t]he provisions of this subsection shall apply in each private action ... brought as a plaintiff class action”). In light of the plain language of the PSLRA, we can see no basis to relax the pleading requirements applicable to securities fraud claims that do not involve class actions.
Neither does our decision in EP Medsystems, Inc. v. EchoCath, Inc., 235 F.3d 865 (3d Cir.2000), require a different conclusion. In EP Medsystems, a single corporate plaintiff brought a securities fraud action against a single corporate defendant, alleging that the defendant’s CEO made a misrepresentation with regards to the licensing prospects of the defendant’s new product line. On appeal, we reversed the district court’s dismissal of the complaint, finding that the PSLRA was to be applied less stringently because the plaintiffs complaint did “not fall into the pattern of the usual securities action.” Id. at 885; see also id. at 881 (noting that complaint was not “a ‘cookie cutter complaint’ or a class action brought by shareholders with an insignificant interest in the company; [rather] it [was] an individual action, based on a transaction arising from direct negotiations between the parties to the action”). This case bears no resemblance to EP Medsystems. While the cause of action in EP Medsystems was “more akin to a contract action than a securities action,” id. at 871, and involved a single corporate plaintiff and single corporate defendant, this matter involves a “plain vanilla” securities fraud claim: several aggrieved Plaintiffs contend that they made investments in reliance on the Defendants’ oral and written misrepresentations and/or omissions. Accordingly, given that this case involves the type of typical securities fraud actions contemplated by 15 U.S.C. § 78u-4(b), we see no reason to apply the narrow exception to the PSLRA carved out by EP Medsystems.
Second, we reject the Plaintiffs’ contention that the Amended Complaint satisfied the rigorous pleading requirements of the PSLRA and Rule 9(b). We have previously held that a plaintiff alleging securities fraud must plead the “who, what, when, where and how” of each specific false representation, “the first paragraph of any newspaper story.” In re Advanta Corp. Sec. Litig., 180 F.3d 525, 534 (3d Cir.1999) (citation and quotation omitted). Moreover, because the Amended Complaint was based “on information and belief,” the PSLRA requires that the Plaintiffs “state with particularity all facts on which that belief is formed.” In re Alpharma Inc. Sec. Litig., 372 F.3d at 147 (quoting 15 U.S.C. § 78u-4(b)). We agree with the District Court that the “Plaintiffs have failed to plead most of the ‘who, what, when, where and how’ of this action; the emotion and theories are pled, but the PSLRA requires specific facts.” App. at 20.
For instance, as for the “what,” the Amended Complaint offers only a cursory description of the identity of the materials containing the allegedly false statements. The Amended Complaint does not describe, either specifically or by category, what the written materials were that contained the false statements but rather speaks elusively of “various undated documents,” “writings,” “further undated writings,” “documents,” “an offering statement,” “supplements,” and “the extant writings.” See Amended Complaint ¶¶ 24, 26, 28, 29, 38, 39, 41. ' Moreover, we are left guessing as to the substance of the false statements in the written materials. The Amended Complaint rests on the generic assertion that the Defendants under *275 stated Collective’s outstanding liabilities at $250,000 and also misrepresented that Collective had “full proprietary rights” to the billing software system. See Amended Complaint ¶¶ 24, 26, 28, 33, 39. Yet, the Amended Complaint does not specify whether the Defendants represented Collective’s liabilities as of a particular date (in which case, it was conceivable that $250,000 was an accurate representation), or whether the representations were describing Collective’s gross or adjusted liabilities, or only certain categories of liabilities. See GSC Partners CDO Fund v. Washington, 368 F.3d 228, 240 (3d Cir.2004) (noting that merely alleging that the defendant had “understated liabilities by $145 million,” without providing a “source to connect this accusation to record evidence” or explaining whether the figure refers to “audited or unaudited statements” is insufficient). Equally troubling is the Plaintiffs’ allegation that the Defendants misrepresented Collective’s “full proprietary interest” in the billing software. Whether the phrase “full proprietary rights” is intended to mean ownership or license rights is unclear, and we note that the record indicates that Collective at least had a licensee interest in the billing software, which could be consistent with a “full proprietary right.” See App. at 33.
The Amended Complaint is also materially deficient in identifying “who” made the misrepresentations and “when” they were made. As an initial matter, we note that the Amended Complaint is devoid of any particular facts to support the allegations against Sunita Chowdhry, Neil Chowdhry, or Collective. Moreover, with respect to Jenkens, the Amended Complaint is devoid of any factual allegations of its role in the securities fraud, other than the general assertion that the firm “joined the conspiracy” or prepared “undated writings” in conjunction with Rosenberg, without any description of Jenkens’ role in preparing the writings or whether it knew the statements were false. See Amended Complaint ¶¶21, 23, 26, 28. As for the “when” of the allegedly false statements, or their delivery dates, the Amended Complaint relies on vague and generic time frames, using such terms as “thereafter,” “at that time,” “undated,” “in or about February 2000,” in “June 2000,” and in “November 2000.” See Amended Complaint ¶¶ 24, 25, 26, 28, 29, 30, 35, 37. Importantly, the timing of several of the misrepresentations is material to this case. For instance, Plaintiffs have named as Defendants the two law firms at which Rosenberg worked: Cowan Liebowitz and Jenkens. Rosenberg apparently left Co-wan Liebowitz for Jenkens in June 2000, around the time when Rosenberg allegedly made certain misrepresentations to the Plaintiffs. By failing to plead the date more specifically, the Amended Complaint fails to put either Rosenberg or Jenkens on notice for the misrepresentations for which they are being held hable.[2] We note also that the Amended Complaint is mostly devoid of facts relating to “where” the *276 alleged misrepresentations were made and/or prepared, and where the Plaintiffs received them.
Third, we reject the Plaintiffs’ argument that the District Court erred in requiring them, at the Rule 12(b)(6) stage, to “quote or attach” the documents on which they relied to their Amended Complaint. The Plaintiffs mischaracterize the basis of the District Court’s decision, as the District Court clearly did not impose any requirement to “quote or attach” documents. Rather, the District Court required the Plaintiffs to comply with their pleading obligations by specifically describing the identity and contents of the documents upon which they relied, or failing this, alternatively by quoting or attaching the documents.[3] The District Court correctly applied this principle, concluding that relying upon documents which are “undated, unquoted, undescribed, and unattached” falls well short of the rigorous pleading burden on a plaintiff in a securities fraud action. See App. at 20.
Although generally a plaintiff is not required to attach documents to a complaint at the pleading stage, see In re Rockefeller Center Props., Inc. Sec. Litig., 184 F.3d 280, 287 (3d Cir.1999); Burlington Coat Factory, 114 F.3d at 1426, a plaintiff under the PSLRA must go beyond vague and generic descriptions of the documents upon which they rely, and instead describe those documents in specific detail. See, e.g., In re Silicon Graphics, Inc. Sec. Litig., 183 F.3d 970, 985 (9th Cir.1999) (in dismissing a securities fraud action where plaintiff failed to describe company reports in detail, the Ninth Circuit noted “that a proper complaint which purports to rely on the existence of internal reports would contain at least some specifics from those reports as well as such facts as may indicate their reliability”); San Leandro Emergency Med. Group Profit Sharing Plan v. Philip Morris Cos., Inc., 75 F.3d 801, 812 (2d Cir.1996) (“Plaintiffs’ unsupported general claim of the existence of confidential company sales reports that revealed the larger decline in sales is insufficient to survive a motion to dismiss.”) (citing Serabian v. Amoskeag Bank Shares, Inc., 24 F.3d 357, 365 (1st Cir.1994)); cf. Burlington Coat Factory, 114 F.3d at 1426 (“What the rule seeks to prevent is the situation in which a plaintiff is able to maintain a claim of fraud by extracting an isolated statement from a document and placing it in the complaint, even though if the statement were examined in the full context of the document, it would be clear that the statement was not fraudulent.”).[4] *277 Here, counsel for the Plaintiffs admitted to the District Court that they had in their possession all of the documents on which they relied, and yet made the “strategic decision” not to plead additional details of the documents, or to attach them or quote from them. This “strategic decision” was inconsistent with the requirements of Rule 9(b) and the PSLRA.
Fourth, we agree with the District Court that the Amended Complaint contains insufficient allegations of scienter on the part of (1) Rosenberg and Jenkens, and (2) Atul Chowdhry and his relatives. The PSLRA requires a plaintiff, “with respect to each act or omission,” to “state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.” GSC Partners, 368 F.3d at 237 (quoting 15 U.S.C. § 78u-4(b)(2)). A “strong inference” of scienter may be established “either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness.” Id (citations and quotations omitted).
With respect to Rosenberg and Jenkens, the Amended Complaint alleges that they had the “motive and opportunity” to perpetrate the fraud because they sought to collect unpaid legal fees that had accrued for past services rendered. See Amended Complaint ¶ 45. However, it is well-established that an allegation of motive based solely upon a desire to receive professional fees is insufficient. See GSC Partners, 368 F.3d at 238 (“[A]n underwriter’s alleged motive to earn its underwriting fees is not alone sufficient to sustain a strong inference of fraudulent intent.”) (quotation omitted); Ellison v. Am. Image Motor Co., 36 F.Supp.2d 628, 639 (S.D.N.Y.1999); Friedman v. Arizona World Nurseries, Ltd., 730 F.Supp. 521, 533-34 (S.D.N.Y.1990); cf. DiLeo v. Ernst & Young, 901 F.2d 624, 629 (7th Cir.1990).[5] Moreover, we question how Jenkens could have had a fraudulent intent when Rosenberg did not join Jenkens until at least June 2000, and the Amended Complaint is devoid of any facts indicating that Jenkens was retained by or owed any fees to Collective prior to Rosenberg switching from Cowan Liebowitz to Jenkens.
The Plaintiffs argue in the alternative that they pled sufficient facts constituting evidence of conscious misbehavior or recklessness by the Defendants. This argument is without merit. The Amended Complaint makes no more than blanket assertions that Rosenberg or Jenkens “knew” that the representations were untrue, without any corroborating factual support explaining how and why the Defendants knew the statements to be false. See Amended Complaint ¶¶ 36, 45. However, as we have made clear, “it is not enough for plaintiffs to merely allege that defendants ‘knew1 their statements were *278 fraudulent, or that defendants ‘must have known’ their statements were false.” GSC Partners, 368 F.3d at 239 (citing In re Digital Island Sec. Litig., 357 F.3d 322, 328-29 (3d Cir.2004)). Moreover, it is unclear how Rosenberg or Jenkens could have known of the alleged misrepresentations when the Amended Complaint states that Collective’s CEO, Chowdhry, “concealed documents from everyone, including his controller, and hence the full extent of the liabilities were not known.” See Amended Complaint ¶ 34.
We also find the Amended Complaint to contain insufficient allegations of scienter as to the other Defendants. Again, with respect to Sunita Chowdhry or Neil Chowdhry, the Amended Complaint contains few, if any, allegations that they acted with the requisite scienter. With respect to Atul Chowdhry, the Amended Complaint makes bald assertions that Chowdhry “knew the truth” and “knew” that the representations being made to the Plaintiffs “were untrue.” Amended Complaint ¶ 45. As we have already noted, such allegations are inadequate. See GSC Partners, 368 F.3d at 239; Advanta, 180 F.3d at 539. Moreover, the Amended Complaint makes the allegation that he “had opportunity and motive” because he “wished to receive and did receive the monies invested.” Amended Complaint ¶45. However, this assertion, given the paucity of facts in the Amended Complaint supporting this assertion with particularity, is simply too conclusory to give rise to a “strong inference” of scienter. See Advanta, 180 F.3d at 535 (“[C]atch-all allegations that defendants stood to benefit from wrongdoing and had the opportunity to implement a fraudulent scheme are no longer sufficient [under the PSLRA].”). Indeed, to the extent that the Plaintiffs allege that Chowdhry was motivated by a desire to obtain capital from the securities investment to cover corporate expenses or debt, a motive so generic that almost every corporate officer in Chowdhry’s position would possess it, the Plaintiffs’ argument must fail as a matter of law. See GSC Partners, 368 F.3d at 237 (“[M]otives that are generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud.”) (quoting Kalnit v. Eichler, 264 F.3d 131, 139 (2d Cir.2001)); see also GSC Partners, 368 F.3d at 237-38 (collecting cases).
Finally, we can find no error in the District Court’s decision to deny the Plaintiffs leave to amend their complaint for a second time. We find the Plaintiffs’ request to be controlled by our decision in In re Alpharma Inc. Securities Litigation, 372 F.3d at 153-54. In Alpharma, the Court affirmed a denial of leave to amend on the grounds that the plaintiff had “already filed previous complaints,” had been given ample time to assemble the first amended complaint, had “failed to satisfy the stringent pleading requirements of the PSLRA,” and had “failed to propose an amendment that would satisfy [the requirements of the PSLRA].” Id. at 153-54. Likewise, Plaintiffs have filed two complaints, have had ample time to prepare those complaints, have both times failed to comply with the pleading requirements of the PSLRA, and failed to seek leave in the District Court and/or proffer a second amended complaint curing the deficiencies or explaining what additional facts they could plead. Moreover, the Plaintiffs’ argument that leave to amend would not be futile because they can attach the documents in question rests on a misunderstanding of the District Court’s decision, one that we have already discussed above. We also note that during oral argument on the motion to dismiss the Amended Com *279 plaint, the District Court asked counsel for the Plaintiffs: “I just want to be sure, now that you’ve had the opportunity to amend, that you have now put before me all the facts upon which your statements upon information and belief are based, and documents. Yes or no?” To which counsel replied: “I believe we have.” App. at 386. In these circumstances, and given the additional prejudice and unfairness that would result to the Defendants from having to defend against a third complaint, we see no abuse of discretion in the District Court’s decision.
IV.
We have considered all of the arguments advanced by the parties and conclude that no further discussion is necessary. Accordingly, the judgment of the District Court will be affirmed.

. Cowan Liebowitz settled with the Plaintiffs in November 2003 and is not a party to the instant appeal.

. At oral argument, counsel for the Plaintiffs repeatedly stressed that the Amended Complaint pleaded facts with sufficient particularity so as to put the Defendants on notice as to the claims against them. Not only do we disagree that the facts alleged provided adequate notice to the Defendants, we note that the purpose of the rigorous requirements of Rule 9(b), and the PSLRA more generally, is not limited to ensuring adequate notice-pleading. Rather, as we have made clear on several occasions, the pleading requirements are intended to “provide an increased measure of protection for [the defendants’] reputations, and [to] reduce the number of frivolous suits brought solely to extract settlements.” In re Burlington Coat Factory Sec. Litig., 114 F.3d 1410, 1418 (3d Cir.1997). We must "rigorously applfy]” the pleading requirements of Rule 9(b) and the PSLRA to effectuate these purposes as well. Id. at 1417.

. The District Court emphasized the fact that the Plaintiffs had a choice on how to comply with the heightened pleading requirements of Rule 9(b) and the PSLRA at an oral hearing on the motion to dismiss: "[YJou’ve got an obligation, especially when I pointed out to you what was missing the first time, and gave you a chance to amend, that’s your chance to come in and put down the date, or if not a date, attach a copy, quote the language, do something so that those trying to test the bonafides of the statements made upon information and belief can test them. So how do I evaluate what 'various undated documents in or about February 2000’ means?” App. at 388 (emphasis added); see also App. at 389 ("But if you have [the documents] why haven’t you quoted them and identified them or attached them or done something to indicate the basis of the information and belief?”).

. Plaintiffs rely on Novak v. Kasaks, 216 F.3d 300 (3d Cir.2000), for the proposition that they were not required to specifically describe the documents which were the source of their “facts.” However, Novak has no bearing on this matter as it addressed the issue of whether the PSLRA requires a plaintiff to disclose confidential sources in the complaint. Id. at 313 ("[P]laintiffs who rely on confidential sources are not always required to name those sources, even when they make allegations on information and belief concerning false or misleading statements.”). There is no allegation in this matter that the documents *277 upon which the Plaintiffs rely are confidential.

. Plaintiffs seek to distinguish these cases by arguing that Rosenberg and the law firms had unpaid bills for prior services rendered, not for services rendered in connection with the offering of the securities. Not only do the Plaintiffs cite no authority in support of this distinction, we find it to be unpersuasive for the same reasons that courts have found a motive premised on a desire to collect current fees to be inadequate. See GSC Partners, 368 F.3d at 238 (noting that if a motive to obtain fees was sufficient to satisfy scienter element, "every underwriter, law firm, accountant, and investment advisor whose compensation or commission depended on the completion of an initial public offering would have a motive to commit fraud, which would make Rule 9(b) wholly meaningless”).