10-4702-cv
New Orleans Emps. Retirement Sys. v. Celestica, Inc.

# UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 29th day of December, two thousand eleven.

PRESENT:   GUIDO CALABRESI,
           REENA RAGGI,
           RAYMOND J. LOHIER, JR.,
                *Circuit Judges*.

-----------------------------------------------------------------------------------

THE NEW ORLEANS EMPLOYEES RETIREMENT SYSTEM, MILLWRIGHT REGIONAL COUNCIL OF ONTARIO PENSION TRUST FUND, CARPENTER'S LOCAL 27 BENEFIT TRUST FUND, THE DRY WALL ACOUSTIC LATHING AND INSULATION LOCAL 675 PENSION FUND,

     *Movants-Appellants*,

    v.           No. 10-4702-cv

CELESTICA, INC., STEPHEN W. DELANEY, ANTHONY P. PUPPI,

     *Defendants-Appellees*,

CHAIRMAN GERALD W. SCHWARTZ, and CHIEF ADMINISTRATOR OF ONEX CORPORATION, ONEX CORPORATION,

     *Defendants*,

RUSSELL HENNING, individually and all others

similarly situated, SHERRY SAYOR, PENSION FUND GROUP,

                               *Plaintiffs*.

------------------------------------------------------------------------

APPEARING FOR APPELLANTS: JOSEPH FONTI (Stephen William Tountas, *on the brief*), Labaton Sucharow LLP, New York, New York.

APPEARING FOR APPELLEES: PHILLIP A. GERACI (Frederic W. Yerman, *on the brief*, Robert Grass, Michael S. Bullerman, Aaron F. Miner, *of counsel*), Kaye Scholer LLP, New York, New York.

Appeal from a judgment of the United States District Court for the Southern District of New York (George B. Daniels, *Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment entered on October 19, 2010, is REVERSED and the case is REMANDED for further proceedings consistent with this order.

Plaintiffs, the New Orleans Employees Retirement System, Millwright Regional Council of Ontario Pension Trust Fund, Carpenter's Local 27 Benefit Trust Fund, and the Dry Wall Acoustic Lathing and Insulation Local 675 Pension Fund, appeal the dismissal of their putative consolidated class action complaint against defendants Celestica, Inc., Stephen W. Delaney, and Anthony P. Puppi.[1] See Fed. R. Civ. P. 12(b)(6). We review the grant of a motion to dismiss de novo, accepting all well-pleaded, non-conclusory allegations in the complaint as true and drawing all reasonable inferences in plaintiffs' favor. See SEC v.

---

[1] Plaintiffs do not appeal the district court's dismissal of their claims against defendants Gerald W. Schwartz and Onex Corporation. We, therefore, do not discuss plaintiffs' claims against those defendants.

2

Gabelli, 653 F.3d 49, 57 (2d Cir. 2011). To survive a motion to dismiss, plaintiffs must allege sufficient facts to state a claim for relief that is plausible on its face, which means that plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009). We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to reverse and remand.

1.    Scienter

Plaintiffs contend that the district court erred in dismissing their complaint for failure to plead the requisite scienter to establish defendants' liability under § 10(b) of the Securities Exchange Act of 1934, see 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder, see 17 C.F.R. § 240.10b-5(b).[2] See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. 308, 319 (2007). We agree.

Under the Private Securities Litigation Reform Act of 1995 ("PSLRA"), Pub. L. No. 104-67, 109 Stat. 737, plaintiffs alleging securities fraud must "state with particularity facts

---

[2] Plaintiffs also pleaded control person liability under § 20(a) of the Securities Exchange Act of 1934 against Delaney and Puppi. See 15 U.S.C. § 78t. Because that claim is derivative of plaintiffs' § 10(b) claim, we do not discuss it separately. We note, however, that plaintiffs have pleaded with particularity that Delaney and Puppi were culpable participants in the alleged fraud because they personally executed and oversaw Celestica's restructuring, were informed of the resulting inventory buildup, and made misstatements to the public regarding the company's inventory management. See SEC v. First Jersey Sec., Inc., 101 F.3d 1450, 1472–73 (2d Cir. 1996) (setting forth elements of § 20(a) control person claim).

giving rise to a <u>strong inference</u> that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A) (emphasis added), <u>i.e.</u>, knowingly or with reckless disregard of the truth, <u>see</u> <u>S. Cherry St., LLC v. Hennessee Grp. LLC</u>, 573 F.3d 98, 109 (2d Cir. 2009).  In deciding whether plaintiffs satisfied this requirement, we assess whether "<u>all</u> of the facts alleged, taken collectively," permit an inference of scienter that is "more than merely 'reasonable' or 'permissible,'" but also "at least as compelling as any opposing inference one could draw from the facts alleged." <u>Tellabs, Inc. v. Makor Issues & Rights, Ltd.</u>, 551 U.S. at 323–24.

Plaintiffs submit that they pleaded with particularity circumstantial allegations giving rise to a strong inference that Delaney, Celestica's chief executive officer, and Puppi, Celestica's chief financial officer, knowingly or recklessly gave public statements about Celestica's financial performance and restructuring progress that were at odds with the company's actual condition.  In particular, Delaney and Puppi allegedly recklessly misrepresented the rising volume of unsold inventory in Celestica's North American facilities.  <u>See</u> <u>ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.</u>, 493 F.3d 87, 99 (2d Cir. 2007) (holding that plaintiffs may meet PSLRA's standard for scienter "by alleging facts . . . constituting strong circumstantial evidence of conscious misbehavior or recklessness"); <u>see also</u> <u>ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.</u>, 553 F.3d 187, 198–99 (2d Cir. 2009) (holding that if plaintiffs cannot show defendants had motive and opportunity to commit fraud, they can "raise a strong inference of scienter under the strong

circumstantial evidence prong, though the strength of the circumstantial allegations must be correspondingly greater if there is no motive" (internal quotation marks omitted)). Plaintiffs rely on statements by former Celestica employees who occupied positions in the company that afforded them direct knowledge of Celestica's inventory buildup during the class period. Three of those confidential witnesses—Celestica's former Business Development Director ("CW1"); former Director of Operations for the Austin, Texas facility ("CW2"); and former General Manager of the Monterrey, Mexico facility ("CW3")—either provided information about rising inventory levels to Delaney and Puppi directly or participated in meetings where they heard Delaney and Puppi informed by others about the company's inventory management problems. According to the complaint, these confidential witnesses:

> . . . participated in a 'monthly operational review' conference call with Celestica's senior management, including [Celestica President of the Americas Michael] Homer (who reported directly to Delaney), wherein defendants, senior management, and plant managers discussed all of the operational metrics for their facilities.

> In particular, CW2 recalls that these detailed discussions often concerned levels of obsolete inventory, problems affecting sales, profit and loss margins, customer satisfaction, and on-time deliveries. Indeed, CW3, who participated in these monthly calls in order to relay the inventory crisis at [Celestica's] Monterrey[, Mexico facility], prepared spreadsheets for senior management—including Delaney and Puppi—detailing the extent of excess and obsolete inventory in Monterrey.

Compl. ¶¶ 84–85; see also id. ¶ 126 (confirming that Delaney and Puppi "personally participated" in those operations conference calls).

5

Although the witnesses are not identified by name in the complaint, plaintiffs' descriptions of these persons are sufficiently particular to permit the strong inference of scienter necessary for plaintiffs to sustain their burden on a motion to dismiss. See Novak v. Kasaks, 216 F.3d 300, 314 (2d Cir. 2000) ("[E]ven if personal sources must be identified, there is no requirement that they be named, provided they are described in the complaint with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged."); see also Makor Issues & Rights, Ltd. v. Tellabs Inc., 513 F.3d 702, 712 (7th Cir. 2008) ("[T]he absence of proper names does not invalidate the drawing of a strong inference from informants' assertions."); accord Institutional Investors Grp. v. Avaya, Inc., 564 F.3d 242, 262–63 (3d Cir. 2009) (confirming that, after Supreme Court's Tellabs decision, plaintiffs may rely on confidential witnesses to establish defendants' scienter for § 10(b) claims). Further, even if plaintiffs could have described the content of the spreadsheets that CW3 created for Delaney and Puppi in more detail, they provided sufficient facts as to who prepared the spreadsheets, how frequently they were prepared, who reviewed them, and the issues they addressed to satisfy the particularity requirement of the PSLRA. See In re Scholastic Corp. Sec. Litig., 252 F.3d 63, 73 (2d Cir. 2001).

That Delaney and Puppi were informed about the inventory buildup and the subpar inventory management in Celestica's North American facilities is consistent with plaintiffs' theory of the underlying fraud. According to plaintiffs, Celestica's restructuring plan

6

provided for the transfer of Celestica's North American sites from the United States to Mexico. See Compl. ¶¶ 2, 63–64, 118. Delaney and Puppi ordered and executed the restructuring, and Michael Homer, Director of Celestica's North American operations, monitored the restructuring and reported its progress to Delaney. See id. ¶¶ 120–24. Moreover, Delaney and Puppi had reason to focus on Celestica's inventory levels: inventory, especially when taken in relation to the company's overall sales, was key to measuring Celestica's financial performance and was a subject about which investors and analysts often inquired. See id. ¶¶ 70–72, 213, 231, 253–55, 258. Thus, the complaint not only alleges that Delaney and Puppi received information about the inventory buildup in Celestica's North American plants, but also explains why Delaney and Puppi would have been alert to information concerning increases in the company's unsold inventory, a fact that reinforces the inference of scienter. See In re Scholastic Corp. Sec. Litig., 252 F.3d at 76–77 (stating that pleaded facts establishing significance of inventory levels to company's financial performance supported allegation that defendants acted recklessly when they failed publicly to acknowledge company's decreased sales and increased returns).[3]

---

[3] Because we conclude that plaintiffs have adequately pleaded scienter on the basis of the confidential witnesses' statements, we need not address defendants' arguments that plaintiffs' allegations regarding Celestica's core operations, violations of generally accepted accounting principles ("GAAP"), and public admission of its inventory buildup immediately following Delaney's and Puppi's departures from the company are insufficient by themselves to establish scienter. Both parties, however, appear to agree that allegations of a company's core operations, GAAP violations, and removal of its executives can provide supplemental support for allegations of scienter, even if they cannot establish scienter independently. That view finds support in decisions by this court and district courts within this circuit. See, e.g.,

These allegations give rise to an inference of Delaney and Puppi's scienter that is at least as strong as the competing inferences that could be drawn. See Tellabs, Inc. v. Makor Issues & Rights, Ltd., 551 U.S. at 324. As this court has reminded litigants, "[e]ven with the heightened pleading standard under Rule 9(b) and the Securities Reform Act we do not require the pleading of detailed evidentiary matter in securities litigation." In re Scholastic Corp. Sec. Litig., 252 F.3d at 72. Here, the particular allegations that Delaney and Puppi were specifically informed, and had reason to know, of the growing inventory stockpile in Celestica's Mexican and American facilities are sufficient to establish the individual defendants' scienter. Moreover, those allegations are sufficient to establish corporate scienter on behalf of Celestica.[4] See Teamsters Local 445 Freight Div. Pension Fund v. Dynex Capital, Inc., 531 F.3d 190, 195 (2d Cir. 2008) ("In most cases, the most straightforward way to raise such an inference for a corporate defendant will be to plead it for an individual defendant.").

---

Novak v. Kasaks, 216 F.3d at 309 (stating that allegations of GAAP violations must be "coupled with evidence of corresponding fraudulent intent" to establish scienter (internal quotation marks omitted)); In re Wachovia Equity Sec. Litig., 753 F. Supp. 2d 326, 353 (S.D.N.Y. 2011) (considering "'core operations' allegations to constitute supplementary but not independently sufficient means to plead scienter"); In re Vivendi Universal, S.A. Sec. Litig., 381 F. Supp. 2d 158, 176–77 (S.D.N.Y. 2003) (accepting that inference of scienter could be drawn from, among other sources, company's recording of loss immediately following executives' departures).

[4] Because we conclude that plaintiffs have alleged corporate scienter by adequately pleading Delaney and Puppi's individual scienter, we do not decide whether the complaint sufficiently alleges corporate scienter independent of the individual defendants' mental states or whether that issue has been preserved for appellate review.

8

2.      Safe Harbor

In further support of dismissal, defendants invoke the PSLRA's "safe harbor," which shields a person from liability "with respect to any forward-looking statement . . . [that is] identified as a forward-looking statement, and is accompanied by meaningful cautionary statements identifying important factors that could cause actual results to differ materially from those in the forward-looking statement." 15 U.S.C. § 78u-5(c)(1)(A)(i). We are not persuaded.

Although some of defendants' statements were forward-looking, others reported on past or present circumstances. Specifically, defendants are alleged to have represented repeatedly that the restructuring was going according to plan or, if not, was slowed because of problems unrelated to inventory management. See Compl. ¶¶ 211, 236, 246. Moreover, when asked directly about the company's inventory levels, defendants responded either that Celestica was managing its inventory well or that any inventory problems were aberrations. See id. ¶¶ 213, 231, 254, 258. In sum, defendants "did more than just offer rosy predictions"; they allegedly stated that present inventory was under control or omitted it as a contributor to the company's costs, despite recklessly disregarding that the opposite was true. Novak v. Kasaks, 216 F.3d at 315. Thus, defendants' cannot obtain dismissal under the PSLRA safe harbor.

3.    <u>Materiality</u>

Defendants contend that any purported misstatements were immaterial because the inventory buildup, which resulted in an eventual $30 million writeoff of inventory at the Monterrey plant, <u>see</u> Compl. ¶ 266, and an additional $60 to $80 million in restructuring charges, <u>see</u> <u>id.</u> ¶ 269, were minuscule in comparison to Celestica's global assets and annual revenues.  An omitted fact is "material" for purposes of § 10(b) if there is a "substantial likelihood" that its disclosure "would have been viewed by the reasonable investor as having significantly altered the total mix of information made available."  <u>Matrixx Initiatives, Inc. v. Siracusano</u>, 131 S. Ct. 1309, 1318 (2011) (internal quotation marks omitted). Misstatements of income, such as Celestica's net earnings statements based on incorrect inventory valuations, can be material "because earnings reports are among the pieces of data that investors find most relevant to their investment decisions."  <u>Ganino v. Citizens Utils. Co.</u>, 228 F.3d 154, 164 (2d Cir. 2000) (internal quotation marks omitted).

We conclude that materiality is satisfied as to the misstatements at issue by allegations of (1) their distortion of Celestica's assets and earnings and concealment of the company's failure to meet analysts' expectations, (2) the significance of the restructuring effort to the company's operations and profitability, and (3) the precipitous decrease in share price that occurred after Celestica disclosed the true state of its inventory.  <u>See</u> <u>ECA & Local 134 IBEW Joint Pension Trust of Chi. v. JP Morgan Chase Co.</u>, 553 F.3d at 204–05; SEC Staff Accounting Bulletin No. 99, 64 Fed. Reg. 45150, 45152 (1999).  These qualitative factors

are sufficient to support an inference at this stage that Celestica's inventory accounting was relevant to investors' investment decisions, defeating defendants' immateriality argument.

4. <u>Conclusion</u>

Because plaintiffs adequately pleaded scienter under the PSLRA, the district court erred in dismissing the complaint for failure to state a claim. We have considered defendants' remaining arguments for affirmance and find them to be without merit. The judgment of the district court is REVERSED and the case is REMANDED for further proceedings consistent with this order.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court